## NICHOLLS & BARRETT VS. GEE ad. et al.

1. CLAIMS AGAINST ESTATES. *Probate of claims unnecessary in foreclosure of mortgage.*

In a proceeding to foreclose a mortgage executed by a party who is deceased, it is unnecessary to probate the claim.

2. USURY. *The act repealing retro-active.*

The 6th section of the act of July 13th, 1868, repealing the statute of usury affected contracts then in existence, and precluded the defense of usury in a suit then pending.

APPEAL from *Chicot* Circuit Court in chancery.

Hon. JOHN A. WILLIAMS, Circuit Judge.

*Garland* for appellants.

The plea of usury had been abolished by act of the Legislature. *Woodruff* v. *Scruggs*, 27 Ark., 26.

There was no partnership as to the $9,000. The two instruments of writing must be construed together. *Vaugine, et al.* v. *Taylor, et al,* 18 Ark., 65. The foreclosure for that is all that is claimed.

*D. H. Reynolds* for appellees.

The contract was usurious. Gould's Digest, ch. 92, secs. 2 and 5; 22 Ark., 413; 7 Paige, 557; 2 Edwards, 267; Blydenburgh on Usury, 86, 248, 254; Kelly on Usury, 40—and the mortgage in consequence. No legislation could cure it. Blydenburgh on usury, 87, 125 and 199; 5 Johns Chan. Rep., 122; 8 Paige, 639; 18 Ark., 456; Gould's Digest, ch. 92, sec. 7; Kelly on Usury, 51, 56; Sedgwick on Stat. and Const. Law, pp. 177, 193–97 and 683. The bill should have been dismissed for want of affidavit of justness of claim and non-payment. Gould's Digest, ch. 4, sec. 107; 7 Ark., 78; 14 Ark., 237, 247; 21 Ark., 519.

And if partnership found, the bill should still have been dismissed, as the loan was usurious. 3 Parsons on Con., 143; Kelly on Usury, 37. And usury might have been insisted on in answer after plea overruled. Mitford, by Jeremy, 306; 20 Ark., 526.

The law in force at the time of the contract controls, unless made retro-active expressly and clearly. Sedgwick on Stat. and Const. Law, 134, 188 to 191; 18 Wis., 298; 1 Florida, 371; 14 Mass., 332; *Baugher et al.* v. *Nelson,* 9 Gill, 299.

This suit cannot be affected by act of July, 1868, being then pending, and even if that act made valid contracts null before its passage, being now repealed, it is as if never passed.

WALKER, J :

James D. Clanton, a planter and the owner of a tract of land in the county of Chicot, Arkansas, borrowed of Nicholls & Barrett, nine thousand dollars, for the payment of which he executed to them his note, dated January 11th, 1866, due 1st of January, 1867, for the sum of nine thousand dollars for value received, with interest thereon at the rate of ten per cent. per annum from date, until paid, and on the same day Clanton executed to Nicholls & Barrett a deed of mortgage upon certain lands owned by him in said county, to secure the payment of the note. And the parties, also, on the same day, entered into an agreement, which was exhibited by the defendants in their answers, and which we will notice in that connection.

Clanton died, leaving Willie D. Clanton, his widow, and one child. The executrix of his will declined to qualify, and letters of administration were granted to Charles J. Gee. The note being due and remaining unpaid, a bill in chancery was filed to foreclose the mortgage and subject the lands to the payment of the debt. The widow, child, and administrator are made defendants. A guardian *ad litem*, was appointed for the infant child.

A demurrer to the bill was filed, which was sustained, and the bill amended.

The defendant, Gee, appeared and filed a plea of usury, at the December term, 1867. At the April term, 1870, the court decided the plea of usury insufficient. And thereupon the defendants, Willie D. Clanton and Charles J. Gee, filed separate answers, in which they admit the execution of the note and mortgage, but set up in defense a written agreement entered into on

the same day that the note and mortgage was made, in which it appears that the $9,000 was intended to be used in the cultivation of a cotton farm belonging to Clanton, who agreed to have the land cultivated, and, with the first cotton raised, to pay the note, and that the residue of the crop, after payment of the note, should be equally divided between the plaintiffs and Clanton. They say that this agreement to divide the profits was part of the consideration for the loan, and with the ten per cent. stipulated in the note, was in excess of lawful interest, and was usurious and void, and insist upon this defense. They also set up another ground of defense under this agreement, that a partnership existed between the plaintiffs and Clanton in the cultivation of the crop, but without any statement in the answer that such was the case. After stating that the crop of cotton raised on the plantation, by the aid of the money advanced, did not yield enough to pay the cost for raising the same, the answers conclude by saying, that at the final hearing they will insist on their defense of usury, and, that not waiving said defense of usury, should the court be of opinion that the note and mortgage are not void, but that there was a partnership created by the agreement, then they will insist that if the complainants were to enjoy part of the profits of the crop, if a good one, the plaintiffs should bear their part of the loss, if a bad one, and that an account be taken between the parties, and a balance struck.

A motion was filed at the September term, 1873, which the record states should have been filed at the May term, 1873, to dismiss the cause, because no affidavit was made, as required by law, before the suit was commenced, which motion was overruled by the court. There was no error in this. We suppose the affidavit referred to was such as is required when a claim is presented for probate and allowance in the Probate Court. We have repeatedly held that when suit is brought to foreclose a mortgage to satisfy a debt thus secured, no such affidavit was necessary. *Hall* v. *Denckla,* 28 Ark., 506.

Nicholls & Barrett vs. Gee, ad., et al.

The case was heard upon the bill, answers, replications and exhibits. The Chancellor found for the defendants, and dismissed the bill with costs. Plaintiff appealed.

The only ground of defense which we need notice, is that of usury. This defense one of the defendants interposed by plea, and it was disallowed by the court. If the defendants had intended to rely upon this defense by plea, they should have rested upon it, and have appealed. The decision of the court upon the plea was in favor of the plaintiffs, and they should have appealed, not for error in that decision, but from the decision and judgment of the court upon the final hearing.

It is the practice, where both parties feel themselves aggrieved by the decision of the court, that both of them appeal, when the whole case with all the rulings of the court, are subject to examination and review. Daniel's Chancery Pleadings and Practice, 1641.

But in this case no cross appeal is taken; indeed, the defendants abandoned their defense by plea, when they set it up in their answers, and had the benefit of it upon final hearing.

Defendants set up the same substantial defense in their answers. They admit the material allegations of the bill to be true, and set up a defense under an agreement between the parties of the same date of the note and mortgage, which they make an exhibit. It appears from this agreement that the $9,000 for which the note was executed was to be used by Clanton in the cultivation of the crop of cotton on the farm of Clanton. That the note was first to be paid out of the crop raised, and the amount over, to be equally divided between plaintiffs and Clanton. They allege the embarrassed circumstances of Clanton, and thus plaintiffs took advantage of his situation, and corruptly and usuriously contracted for and took, not only the ten per cent. stipulated in

the note, but also one-half of the crop to be raised, after payment of the note.and interest. They insist upon their defense of usury, and conclude that if the court should not sustain this defense and should be of opinion that, under the agreement, there was a partnership, that it will so declare, and have an account of expenses and profits taken, and render a decree upon equitable principles.

As regards this part of the answer which concludes more like a cross bill, or answer setting forth facts necessary to make it in substance a cross bill, we may remark that there is no allegation in the answer with regard to a partnership, nor is there a word in the agreement with regard to it, and of course nothing upon which to base a prayer for relief, if indeed such was intended by the answer.

The two grounds of defense are wholly irreconcilable. If the money was intended as an advancement, to be used in a partnership transaction, then there was no loan, without which there could be no usury. If on the other hand, it was a loan for which ten per cent. interest was charged, and in addition to this plaintiffs, as part consideration for the loan, were to receive half the profits of the crop, then if the plea of usury is permissible, a case may be presented for consideration.

The main question to be determined is, had the defendants a right to interpose this defense under the statute in force? It will be seen that this debt was contracted at a time when the statute, ch. 92 Gould's Digest was in force, but before the decision of the court upon the plea of usury, and before the answers of the defendants were filed, the act of 13th July, 1868, in express terms, repealed all of the sections in that chapter, which limited the rate of interest to be contracted for to ten per cent., and which declared that all contracts for the loan or forbearance of money loaned, for a greater rate of interest than ten per cent.

should be void, so that the question as to whether the plea of usury can be interposed must depend upon the proper construction of the act of 13th July, 1868.

This court heretofore held in the case of *Woodruff* v. *Scruggs,* 27 Ark., 26, that the 6th section of this act denied the right to interpose this defense in bar of any action, whether the contract was made before or after the passage of the act, and we might decide this question by referring to that decision, without further consideration. But in deference to the opinion of the distinguished counsel for defendants, who assumes that our former decision was made without due consideration of the whole act in connection with the 6th section, we will briefly review the act, and the authorities cited by counsel, as well as all others at our command, and give to the act such construction as we think will fully express the intention of the Legislature when it was enacted.

It is a familiar rule that in order properly to ascertain the intention of the Legislature, and properly to construe its acts, we should look to the law repealed, and the mischief intended to be remedied by the new enactment.

At the time the act of July, 1868, was passed, there was a law in force which limited the right to contract for interest for the loan of money to ten per cent per annum, and which declared all contracts for a greater amount of interest than ten per cent void. This statute the Legislature repealed, and enacted that contracts for the loan of money should be without limitation and without penalty. The mischief, then, in the opinion of the Legislature, was the limitation upon the right to contract for the loan of money, and affixing a penalty for making contracts for a greater amount than ten per cent. The remedy intended by the act was to confer an unlimited power to contract, and to remove the penalty.

Another means of ascertaining the intention of the Legislature is to so construe the act as to give effect to all of the provisions, and, at the same time, to carry into effect the general purpose and intention of the act, for it is a rule that every word and clause shall be presumed to have been intended to have force and effect, if possible, so that no clause, sentence or word shall be void, superfluous or insignificant.

With these rules as our guide, and with the wrong, and the remedy intended, we will look to the statutes.

Section 3, of the act of July, 1868, provides " that, in all contracts hereafter to be made, whether written or verbal, it shall be lawful for the parties to stipulate the rate, and agree upon the sum of interest that may be taken and paid, upon any one hundred dollars of money borrowed, or in any manner due and owing from any person or corporation to any other corporation or person in this State."

The 5th section of the act is evidently intended to give a like effect to contracts made in the State, but payable out of the State, as is given to contracts made and payable in the State, and such, also, was the intention of the latter .clause of the 6th section. Section 6 of said act is as follows: " No plea of usury, nor defense founded upon any allegation of usury, shall be sustained in any court of this State. Nor shall any security be held invalid on any allegation of usury, where the rate of interest received, discounted or taken, does not exceed the laws of this State, in consequence of such security being payable in a State, kingdom or country where such rate of interest is not allowed." The whole question at issue turns upon the proper construction of section 6, and before referring to the language used in this section, we will refer to another rule, which is, where the language used is plain and unambiguous there is no room for construction ; there is nothing to construe.

No one can read this section and find the slightest ambiguity or doubt as to what the Legislature intended; there is not a word to indicate whether this prohibition shall be prospective or retrospective in its operations, but declares, in positive terms, "that no plea of usury shall be sustained in any court."

Defendants' counsel insist that we shall construe this statute as applicable only to contracts entered into after its passage. But it will be seen that to do this would, in effect, leave the whole of section 6 superfluous and unnecessary, because, if construed, to act prospectively, then, there is nothing for it to act upon. By the 3d section all limitation upon the right to contract for interest is swept off.

The usury act in Gould's Digest, chapter 92, was repealed. This latter act imposes no penalties for usury. There was no usury act in force in the State, and, consequently, to give effect to the act, it must refer to pre-existing contracts, or to none. If there was any other sensible construction to be given to this act, than to declare it retrospective in its operation, we should adopt it. But by every known rule for construing statutes we feel constrained to declare that it was clearly the intention of the Legislature to give to this section a retrospective operation, and whatever may be our opinion with regard to the propriety or necessity of the act, in deference to a co-ordinate department of the government, acting as we do under oath, it becomes our duty to sustain the legislative will and action, unless we should find the act clearly unconstitutional.

The note, to secure the payment of which the mortgage was given, was for the payment of $9,000, with ten per cent. interest, and upon its face was not usurious. It was necessary, therefore, by plea, to connect some other contract with the note, which, with the ten per cent. contracted to be paid, would amount to usurious interest for the loan of the $9,000. We have seen that

when this note was executed the statute of usury was in force. The effect of the repeal, says Segwick, 129, was "to obliterate the statute repealed, as completely as if it had never been passed. The repeal of a statute puts an end to all prosecutions under the statute repealed, and to all proceedings growing out of it pending at the time of the repeal. In criminal proceedings the effect of the repeal is not only to wipe out the law but also to discharge the penalty, but in civil cases the rule is different. When a right in the nature of a contract has vested under the original statute, the repeal does not disturb it."

The defendants in this case assert no claim under a contract, but a right to defense against a contract alleged to have been made in violation of law. They say that the right to this defense was vested in them by force of the statute then in force, and has survived to them since the repeal of the statute under which it was made, and but for the passage of the act of 1868, which denies to the defendants this defense of usury, might have been successfully interposed.

The Legislature can pass no law which impairs the obligation of contracts. Of this there can be no question, and whilst this act of the Legislature does not directly impair the obligation of the contract, it does deny a remedy of which, but for the act, the defendants might have availed themselves.

Upon this question of right and remedy, and the effect of legislation upon them, the decision of the courts have not been uniform.

Segwick, at page 133, after a review of these decisions, concludes by saying: "This distinction has been drawn by the highest federal tribunals between the obligation of a contract and its remedy. It has been regretted, but the State Courts have adopted it, and it is now too late to hope for its abandonment. What relates to the remedy is understood to be at the mercy of legislation, but the obligation of contracts is covered by the ægis of the federal charter.

That usury is a defense which must be pleaded is well settled by this court. *Howell* v. *Vinsant*, 7 Ark., 146; *Ambler* v. *Ruddell*, 17 Ark., 138; *Pilsbury* v. *McNally*, 22 Ark., 409. In the last case cited it was held that usury could not be given in evidence under the general issue, but must be specially pleaded.

A usurious contract is not, for a consideration *malum in se*, void, nor is it void *ab initio*, but the statute assumes the existence of the contract, and declares it to be void as corrupt, and against the statute. The note or bond is held as evidence of a right of action, and it devolves upon the defendant affirmatively to sustain his plea, which being done, the court pronounces the contract void. If such was not the case, courts of equity would not, when appealed to by the borrower for relief, make the contract for a usurious loan, the basis for raising an equity in favor of the lender, to relieve him from the penalty. We have held the 6th section of the act 1868, to be retrospective, but it by no means follows for that reason that it is unconstitutional.

In the case of *Satterlee* v. *Matherson*, 2 Peters, 380, it was held that retrospective laws, which do not impair the obligation of contracts or partake of the character of *ex post facto* laws, are not condemned or forbidden by any part of the Constitution.

The defendants claim to have a vested right to this defense of usury, which they deny the constitutional right of of the Legislature to deprive them of. Cooley in his work on Constitutional Limitations, at page 370, after giving several examples where a defense cannot be taken away by retrospective legislation, such for instance, as a plea of payment or satisfaction, says in regard to these cases : " We think investigation will show, that a party has no vested right in a defense based upon an immorality not affecting his substantial interest * * * There is no doubt of the right of the Legislature to make laws which

*Vol. xxx.—10.*

reach back to, and change and modify the effect of prior transactions, provided retrospective laws are not forbidden *eo nomine* by the State Constitution, and provided no other objection exists than their retrospective character. As a fit illustration of this rule; in the case of *Trustees* v. *McGaughy*, 2 Ohio N. S., 155, by statute certain notes issued by unincorporated banks were declared void; subsequently, the Legislature declared that it should not be lawful for a defendant to plead, set up, or insist upon the defense that the notes were void on account of their being contracted in violation of the statutes. It was held that the original invalidity was only because of the statute, and was founded upon a principle of public policy, which the Legislature had seen fit to abrogate, and that the defendant could not be permitted to rely upon it.

By a statute of Connecticut, where loans of money were made, and a bonus paid by the borrower beyond that allowed by law, the demand was subject to a deduction; after this act, the Legislature passed an act declaring that such loans should not be held usurious and void, but that if in other respects valid as to principal and interest, the law was sustained.

In *Goshen* v. *Stonington*, 4 Conn., 209, it was held that where a statute was expressly retro-active and the object of it is to correct a mistake, remedy, a mischief, execute the intention of the parties, and promote justice, then both as a matter of right and of public policy affecting the peace and welfare of the community, the law should be sustained. *Savings Bank* v. *Allen*, 28 Conn., 97.

In the case of *Curtis* v. *Leavitt*, 17 Barber, 309, a statute forbidding the interposition of the defense of usury was treated as a statute repealing a penalty.

In the case of *Gibson* v. *Hibbard*, a note void at the time it was given for want of a revenue stamp, was held valid after it was stamped under a subsequent act of Congress permitting it.

In the case of *Springfield* v. *Hampden Commissioners*, 6 Pick., 501, it was held that there was no such thing as a vested right in a particular remedy.

In the case of *Bunker* v. *Nelson*, 9 Gill., 299, that there is no vested right in the defense of usury.

In the case of *Foster* v. *Essex*, Burk, 16 Mass., 245, it was held that there could be no vested right to do wrong.

The borrower may or he may not be in such circumstances as to be imposed upon by the lender. It is sometimes the case that the borrower is really obliged and benefited by getting the use of money at rates exceeding lawful interest, but he is not in equity and good conscience at liberty to refuse to refund the money borrowed because he was charged greater interest than allowed by law. It is at least morally wrong for him to refuse paying the money borrowed, and certainly he has no vested right to the use of a plea, which protects him in doing wrong.

After a careful examination of these decisions we have reached the conclusion that the Legislature has power by retrospective legislation, in many cases, to deny to the defendant a defense which is not in itself meritorious, and particularly such as are created by statute. The defense of usury was founded by legislation, at the time supposed to be on principles of public policy. Experience may have shown a subsequent legislature that this defense did not promote or subserve the public interest, and believing such to be the case, the same power that created the defense can withdraw it. Such was doubtless the conclusion of the Legislature of 1868. They repealed the usury act as having failed to produce beneficial effects, and expressly denied the defense of usury. This we must hold they had a constitutional right to do. In no case should we declare an act of the Legislature unconstitutional unless most clearly so. It is not for us to review, or revise legislative action but to enforce the legislative will, when acting within its constitutional limits.

Having taken, to some extent, a wider range of review of authorities than was taken in *Woodruff* v. *Scruggs,* we have reached the same conclusion; or even if in doubt as to its correctness we should not, for that reason, feel at liberty to reverse it, and should have been content to decide this case upon the authority of that without reference to other authorities, but for the earnest appeal by counsel that we should do so.

Let the judgment of the court below be reversed, and the cause remanded for further proceedings.