BARBER VS. PEAY, as adm'r.

1. LIEN: *Not displaced by the debtor's death.*
   Where a creditor has acquired a specific lien on particular property of this debtor during his life time, it may be enforced after his death, and the creditor need not resort to the general assets of his estate through the Probate Court.

2. EXECUTION, LEVY, ETC. *Lien of, may be enforced after debtor's death.*
   An execution was issued and levied on land during the life of the debtor, after his death the judgment was revived against the administrator and a writ of *vend. ex.* issued to sell the land levied on: Held, that by the levy a specific lien was fixed on the land which could be enforced by a sale under the *vend. ex.*

APPEAL from *Pulaski* Circuit Court.

Hon. R. W. HOWARD, Special Judge.

*Wassell & Moore* and *Rose*, for appellant.

*Gallagher & Newton, contra.*

ENGLISH, CH. J.:

The material facts of this case are, that on the 9th of January, 1869, Luke E. Barber obtained a judgment in the Pulaski Circuit Court against Henry C. Ashley for a sum of money. On the 18th of October, 1870, an execution was issued on the judgment to the Sheriff of Pulaski County, and levied upon the interest of Ashley in certain lots situated in the city of Little Rock, and returned, by direction of plaintiff's attorney, without sale.

Before the expiration of the lien of the judgment, and before the death of Ashley, the judgment was revived, and the lien continued.

Ashley died in January, 1873, and afterwards Gordon N. Peay was duly appointed administrator of his estate; and on the 11th of February, 1874, the judgment was revived against him as such administrator, etc.

On the 24th of July, 1875, a *venditioni exponas* was issued on the judgment, commanding the sheriff to sell Ashley's interest in the lots levied on under the original *fi. fa.*

Peay, as the administrator of Ashley, filed a motion to recall and quash the *vend. ex.*, stating the above facts, etc. Barber demurred to the motion, or petition, the court overruled the demurrer, and made a final order recalling and quashing the *vend. ex.*, and Barber appealed.

It is insisted that appellant was obliged to have his judgment allowed and classed in the Probate Court as a claim against the estate of Ashley, and look to the general assets for payment, and that he could not take out a *vend. ex.* and sell the lots after the death of Ashley.

On the other hand it is submitted that the levy of the original *fi. fa.* on the lots, segregated them from the rest of the estate, and created a specific lien upon them, which could be enforced by sale upon *vend. ex.* after the death of Ashley, the judgment having been revived against the administrator.

In *The State Bank* v. *Etter*, 15 Ark., 268, a *fi. fa.* was issued upon the judgment, and levied upon land, and after the levy, the defendant in the execution died, and the writ was returned without a sale. Afterwards, and without revivor of the judgment against the administrator of the defendant, a *vend. ex.* was issued, and the sheriff was proceeding to sell the land taken in execution under the original *fi. fa.*, and the sale was enjoined on the ground that the specific lien created by the levy could not be enforced by sale under the *vend. ex.*, without revivor of the judgment against the administrator of the defendant in execution, etc.

Mr. Justice Walker, who delivered the opinion of the court, said: "If the sale had progressed and been made at the return term of the writ, under which the levy was made, even though

the defendant, after levy and before sale, died, there would be strong reason for holding the sale valid, but after the return of the process, we have held both upon principle and authority, that no further process can issue until the judgment is revived by *sci. fa.* against the parties interested in the estate levied on," etc.

The judge then proceeds to discuss the question whether after such revivor, the land could be sold on *vend. ex.*, in view of our administration system, but leaves the question undecided, as it was not then before the court.

In this case, the judgment was revived against the administrator, before the *vend. ex.* was issued.

In *Davis* v. *Oswalt,* 18 Ark., 414, the court said : " Such is the effect of our Probate Statutes upon the common law rule, that although a *fi. fa* comes to the hands of the sheriff before the death of the defendant, and thereby becomes a general lien upon all his personal property, yet, inasmuch as it does not become a specific lien upon any particular property, until the officer makes a levy, etc., the death of the defendant suspends the execution of the process, and it is not regular for an officer to make a levy and sell the property after his death."

In that case, the decree was a specific lien on property, and the order of sale was issued before the death of the defendant, and the sale made after her death, and the court held the sale valid.

The court further said: " The lien of the decree, and order of sale in the hands of the sheriff, upon the slaves, was as specific as if a levy had been made before the death of Mrs. Dobbins. The creditor had acquired, during her life, a vested right to have his decree satisfied out of the particular property named therein, in preference to her creditors generally, and her death did not divert this right."

So it was held in *Arnett* v. *Arnett et al.*, 14 Ark., 57, that when slaves were levied upon under an execution against the husband, before his death, his widow was thereby deprived of dower in the slaves. But not so where the execution was in the hands of the sheriff, but not levied before the death of the husband. *James* v. *Marcus et at.*, 18 Ark., 421.

In *Frellson* v. *Green*, as administrator, 19 Ark., 376, an attachment was levied on the lands and goods of the defendant, and after the levy he died, and his administrator, being substituted as defendant in the suit, moved to quash the levy, on the ground that it would interfere with the usual and ordinary course of administration of the estate of the deceased. The court sustained the motion, dissolved the attachment, released the property, and permitted plaintiff to take a judgment against the administrator for the debt; and on error, by the plaintiff, this court held that the levy of the attachment, during the life of the defendant, fixed a specific lien on the property, and that, on revivor against his administrator, the plaintiff was entitled to judgment condemning the property to the satisfaction of the debt.

In *Doe* v. *Heath*, 7 Blackford (Ind.), 154, the court said: "The first objection is predicated on the proposition that a sale of lands on execution, after the death of the execution defendant, notwithstanding a levy was made in his life time, is a void sale, and passes no title to the purchaser. By the common law lands could not be taken in execution upon a writ of *fieri facias*, the goods and chattels alone of the defendant being liable to seizure by virtue of that writ. If the defendant died after execution awarded, the writ might be served upon his goods in the hands of his executor or administrator. By statute a *fieri facias* in this State reaches the lands as well as the goods and chattels of the execution defendant. If the goods and chattels of a defendant be seized, and he die before execution is completed, they

may, notwithstanding his death, be sold by virtue of the execution. We see nothing in the statute from which we can infer that a distinction was intended to be made, in this respect, between a levy on the lands, and a levy on the goods and chattels of the deceased. The mode of proceeding is the same in both cases."

A similar construction was given to the statute of Pennsylvania, by Judge Washington, in *Bleecker* v. *Bond*, 4 Wash. C. C. R., 6, and he held that where a *fi. fa.* had been levied on land during the life of the defendant, a *vend. ex.* might be taken out after his death, without revivor on *scire facias*. But this court, as we have above shown, has decided otherwise.

In *Caperton* v. *Martin*, 5 Ala., 220, held, that where an execution was levied on the goods of the debtor during his life, his subsequent death and the insolvency of his estate did not displace the specific lien created by the levy, and that it could be enforced, notwithstanding the administration statute, providing for a *pro rata* payment of the debts of the deceased out of his estate.

In *Doe* v. *Hayes*, 4 Indiana, 117, held, that where a *fi. fa.* was levied on the land of the execution debtor during his life time, and returned without sale, and after his death a *vend. ex.* was issued, and the land sold, the sale was valid.

So in *Jones* v. *Jones*, 1 Bland (Maryland), 449, it was decided that land, levied on in the life of the execution debtor, might be sold after his death. That, in this respect, there was, upon principle, no difference between a levy upon lands, and a levy on goods.

In Kentucky, held, that where an execution was levied on defendant's land, the writ was abated by his death, and the land could not be sold; but that the lien upon the land, created by the levy, was not displaced by the death of defendant, and could

be enforced in equity, under a statute. *Holeman's ex'r.* v. *Holeman's heirs*, 2 Bush., 519.

In *Taylor* v. *Doe*, 13 Howard (U. S.), 268 (on Error to Mississippi), where land was levied on in the life of the debtor, and thereby seized into the custody of the law, a sale after the death of the debtor, on *vend. ex.*, was held valid.

The *vend. ex.* is but part of and a continuation of the original process of execution, under which the property is seized, and the sale on *vend. ex.* is the completion of the process.

By our statute, all demands against the estate of a deceased person are divided into five classes, and judgments which are liens on lands, etc., are placed in the third class, etc. Gantt's Digest, sec. 98, etc.

But it cannot be affirmed that all judgments must necessarily be probated and classed and paid in full, or *pro rata*, if there is a deficiency of assets, out of the general assets of the estate.

For it is clear, under the decisions above cited, that where an execution has been issued upon a judgment, and levied upon the goods of the defendant, they may be sold after his death to satisfy the judgment, and that the creditor need not resort to a probate of the judgment for payment out of the general assets.

So we have seen that when land is levied on, in the life of the debtor, and he dies, a sale may be made after his death, and before the return day of the writ.

And so we think the adjudications cited, show, that if the writ is returned after the levy without a sale, a *vend. ex.* may be taken out and the specific lien created on the land by the levy, enforced by sale, after the judgment has been revived against the the administrator.

So when the judgment or decree is a specific lien on property, real or personal, it may be enforced by sale after the death of the debtor.

All such exceptions to the general rule rest upon the ground that when a creditor has acquired a specific lien upon particular property of the debtor, during his life time, it may be enforced after his death, and that the creditor is not obliged to resort to the general assets of his estate through the Probate Court, as creditors must do who have judgments, or executions in the hands of officers which have not been levied before the death of the debtor, which are general liens upon his real and personal property.

It is suggested that there might be several judgments against a debtor, constituting senior and junior general liens upon his lands, that the junior judgment creditor might take out execution and, in the life of the debtor, cause it to be levied on his lands, thereby fixing a specific lien upon them, which might be enforced by sale, after his death, and that the senior judgment creditors would have to resort to probate of their judgments, and take the chances of getting them paid out of the general assets of the deceased debtor in the hands of his administrator, etc. In other words, that a junior general lien creditor might, by such diligence, acquire a preference over senior general lien creditors. That is true, but it would result from the neglect of the senior judgment creditors to sue out executions, and cause them to be levied in the life of the debtor, and it is an old maxim that the law favors the diligent.

So it might happen that several executions might come to the hands of a sheriff at earlier and later dates, constituting senior and junior general liens on the goods of a debtor, according to the dates of their delivery to the officer, and the junior execution creditor might procure a levy to be made on goods of the debtor before his death, which he certainly could enforce by sale after his death, while the senior execution creditors, though they might hold the sheriff responsible for neglecting to levy their

executions, would have to resort to the general assets of the deceased debtor, through the Probate Court, for payment of their judgments.

We have been able to find no case where it has been adjudged that a specific lien fixed upon land or goods, by the levy of an execution, in the life of the debtor, is displaced and destroyed by the death of the debtor, and may not, in some mode, be enforced after his death, unless it is lost by the laches of the creditor.

In *Bently et al.* v. *Cummins*, 9 Ark., 487, and in *Adams et al.* v. *Cummins, adm'r.*, 10 Ark., 541, and in *Hornor* v. *Hanks*, 22 Ark., 573, cases relied on by counsel for appellee, no levies were made before the deaths of the debtors.

So in *Yonley* v. *Lavender*, 21 Wallace, 276 (on error to this court), the levy was made after the death of the debtor, on execution from the federal court against his administrator.

Whether the levy be upon lands or goods, the property is seized into the custody of the law, and is a satisfaction of the judgment until disposed of (*Trapnall* v. *Richardson et. al.*, 13 Ark., 549), and we cannot see, on principle, why the death of the debtor should release the property from such custody, deprive the execution creditor of the benefit of a specific lien acquired by the levy in the life of the debtor, and turn the property over to the administrator, etc., for the benefit of other creditors who have acquired no such specific lien upon it in the life of the debtor.

See *Black, adm'r.*, v. *Planters Bank et. al.*, 4 Humph., 367.

In *Dodge, adm'r*, v. *Mack*, 22 Ill., 95, the court, after showing that a statute of Illinois divided all claims against estates of deceased persons into four classes, etc., said: "Thus it will be seen that whether a debt be due by judgment, bond or simple contract, if resort is had to the mode prescribed by the statute

for its payment, no preference is given: Yet that there are cases where the debt may be collected without filing the claim, and sharing in the distribution of the assets, is undoubtedly true. As where the creditor holds a mortgage on property of deceased, or where property has been pledged to secure the payment of the debt, or where there has been a recovery and an execution issued and levied in the life time of the deceased, in each of these cases, the property thus bound may be sold after the debtor's decease, in satisfaction of the debt. In each of these cases the creditor has acquired a lien, and the specific property has been appropriated either by the debtor, or by the law, for its satisfaction, and the death of the debtor can in no wise affect the rights of the creditors."

The judgment must be reversed, and the cause remanded to the court below with instructions to sustain the demurrer to the petition to recall and quash the *vend. ex.*, and permit appellant to take out an *alias vend. ex.*