ARKMO LUMBER COMPANY *v.* CANTRELL.

Opinion delivered June 18, 1923.

1. EVIDENCE—PAROL EVIDENCE RULE—APPLICATION.—The rule which excludes parol evidence for the purpose of varying a written contract is confined to the parties to the contract, and does not preclude a stranger to it from introducing such evidence.

2. PRINCIPAL AND AGENT—AGENCY ESTABLISHED HOW.—While the declarations of an alleged agent would not be competent to prove his agency, and his assumption of agency would not be sufficient to establish it, his testimony that he was an agent and as to his authority was competent.

3. EVIDENCE—SELF-SERVING DECLARATIONS.— Self-serving declarations of defendant's intestate were incompetent as evidence in defendant's behalf.

4. MECHANIC'S LIEN—AUTHENTICATION OF CLAIM AGAINST DECEDENT. —Crawford & Moses' Dig., § 103, relating to the mode of authenticating claims of a corporation against decedent's estates, has no application to a suit in equity to enforce a material-man's lien against an estate, the right to which the plaintiff acquired during the life of the decedent.

5. MECHANIC'S LIEN—NOTICE BY SUBCONTRACTOR.—One who furnished materials for buildings on lands of defendant's testator under contract with such intestate's agent is not a subcontractor within Crawford & Moses' Dig., § 6935, and was not required to give to the testator's executrix the ten days' notice specified in Crawford & Moses' Digest, § 7917.

6. MECHANIC'S LIEN—DESCRIPTION OF LAND OR BUILDING.—Under Crawford & Moses' Digest, §§ 6906, 6922, providing the method of filing a mechanic's or materialman's lien, *held* where one claiming a materialman's lien asked to have his lien on the debtor's entire plantation, consisting of 1,380 acres, without describing the particular land or building on which the lien is sought to be established, the claim is too indefinite.

7. PRINCIPAL AND AGENT—UNAUTHORIZED ACT—LIABILITY OF AGENT. —A tenant on decedent's farm who falsely represented that he had authority to bind decedent in purchasing the materials for which a materialman's lien is claimed thereby rendered himself personally liable for such materials.

8. PRINCIPAL AND AGENT—EVIDENCE OF AUTHORITY.—In an action against one who, without authority, assumed to act as the agent of another, a written contract between such assumed agent and his principal is admissible to show that he had no such authority.

9. FRAUDS, STATUTE OF—CONTRADICTING WRITTEN CONTRACT BY PAROL.—A lease contract for the period of five years, required by the statute of frauds to be in writing, cannot be contradicted, modified or changed by a subsequent oral contract.

10. FRAUDS, STATUTE OF—PAROL AGREEMENT CHANGING CONTRACT.— Where a landlord and tenant embodied a contract as to repairs and improvements in a five-year lease of lands required by the statute of frauds to be in writing, they could not modify or change such contract by a parol agreement.

Appeal from Jefferson Chancery Court; *John M. Elliott*, Chancellor; affirmed.

*Coleman & Gantt, Gray & Morris* and *Frauenthal & Johnson,* for appellants.

There was a valid verbal contract entered into after the execution of the lease, whereby Scroggin was authorized by McClung to purchase materials and make the repairs on the McClung farm, instead of the landlord making them, as he agreed to do, which contract was virtually performed by Scroggin. Proof of such contract violated no rule of evidence. 10 R. C. L. 1033, § 225; 6 R. C. L. 922, § 306; 56 Am. St. Rep. 656; 113 Ark. 15; 85 Ark. 605; 225 S. W. (Ark.) 294.. This is true notwithstanding provision that no verbal contract for repairs should be binding on lessor; that there should be no liability against him for repairs unless by his written authority therefor. Bishop on Contracts, §§ 776, 667; 62 Miss. 113; 113 Ky. 7, 67 S. W. 40, 101 Am. St. Rep. 345. Verbal contract not within statute of frauds, having been performed by Scroggin. While Scroggin's testimony about the subsequent verbal agreement may be inadmissible against executrix of McClung's estate (§ 4144, C. & M. Digest) in support of his claim, it would nevertheless be competent on behalf of appellant. The chancellor's findings are clearly against the preponderance of the testimony. The court erred in not sustaining appellant's motion to quash all depositions taken on behalf of appellee, administratrix. 107 Ark. 153; 9 N. E. 283; 40 Pac. 954; 29 Ga. 82; 16 Gray (Mass.) 161. These seven depositions taken at the instance of appellee all purported to give conversations with deceased, J. H. McClung, in reference to his business affairs with Scroggin, in Scroggin's absence. Strait's deposition was also inadmissible. Deposition of Scroggin and Wood of conversations with deceased relative to his relations with Scroggin were admissible, being to declarations of decedent against interest. 93 Ark. 214; 120 S. W. (Mo.) 755; 110 S. W. (Ky.) 382; 97 Ark. 574; 51 Ark. 530; 45 Ark. 481; 123 Ark. 226. The court also erred in dismissing cross-complaint of appellant Scroggin against

appellee as administratrix. Secs. 1194, 1195, C. & M. Digest; 134 Ark. 311; 135 Ark. 53; § 1198, C. & M. Digest, also § 1204. Notice of filing lien was properly given. 93 Ark. 279. Even though the improvement and repairs had been made after the date when the written contract went into effect, which is not the case, the verbal agreement subsequently made having been performed by Scroggin, the doctrine of estoppel would apply. 69 Ark. 513; 52 Ark. 207; 106 Pac. (Okla.) 839.

*Johnson & Frauenthal,* for appellant Scroggin.

It was not necessary to file a verified claim against the administratrix in order to foreclose or enforce a mechanic's lien against property owned by decedent. It is like a mortgage in this regard. 32 Ark. 397; 32 Ark. 407; 28 Ark. 506; 30 Ark. 135; 32 Ark. 443; 59 Fed. 722. An affidavit was made to the account of the Arkmo Lumber Co., in perfecting its lien in conformity to § 6922, C. & M. Digest. 90 Ark. 340; 97 Ark. 296. Appellant lumber company had nothing to do with the written lease contract. It sold the materials to Scroggin, and could prove by him that he was the agent of McClung, and, as such, bought the materials. 10 R. C. L. 120, § 213; 93 Ala. 70; note 17 L. R. A. 272; 8 Ann. Cas. 347; 31 Ark. 411. If Scroggin was not the agent of McClung in the purchase of the materials, or exceeded his authority, then he is personally liable to the lumber company. 92 Ark. 535; 2 Ark. 338; 48 Ark. 188; 21 R. C. L. 914, § 93. The judgment should be affirmed against Scroggin if this court holds he was not the agent of the lumber company in purchasing the materials.

*Moore, Smith, Moore & Trieber,* for appellee.

All the testimony of appellant tending to show a verbal or oral agreement by McClung authorizing Scroggins to have repairs or improvements made at McClurg's expense. The lease contract was required by the statute of frauds to be in writing, and no alleged verbal or oral modifications of it could be valid. 106 Pac. (Okla.) 839; 73 Atl. (Conn.) 752; 60 N. E. (Ind.) 139; 33 S. E. (Ga.)

28; 158 Pac. (Kan.) 13; 57 N. Y. 646; 50 Mo. App. 275; 181 N. W. (Wis.) 214; 133 Pac. (Col.) 623; 1 Beach on Contracts, § 577; Browne on Statute of Frauds, § 411; 29 Am. and Eng. Enc. of Law, 824. In none of the four Arkansas cases cited by appellant was involved the question of the right to verbally modify after its execution a written contract required by the statute of frauds to be in writing. Counsel attempt to avoid the effect of our position by arguing that the repairs and improvements claimed to have been made by Scroggin constitute a part performance that will take the so-called verbal contract of modification out of the statute of frauds, but such part performance, in order to do this, must be referable solely to the contract. 75 Ark. 526; 63 Ark. 100. The rule attempted to be invoked by counsel for Arkmo Lbr. Co. in its supplemental brief is not applicable to facts of this case, its contention is refuted by language of 10 R. C. L. 1021; 30 N. Y. Supp. 1040. Scroggin was not authorized by McClung, as his agent or otherwise, to make improvements or repairing or purchase materials therefor, and appellant lumber company is not entitled to any lien for materials furnished. C. & M. Digest, § 6906. Arkmo Lumber Co. in furnishing materials could at most have been no more than subcontractor, and could not fix a lien, not having given the required ten days' notice. C. & M. Digest, §§ 6935, 6917. It was an issue of fact as to whether or not McClung modified the lease contracts by authorizing Scroggin to make repairs and improvements to be paid for by him. The testimony of Dr. Green and Mrs. Cantrell as to McClung's exclamations and statement, when bills for repairs presented, were to the *res gestae.* 3 Wigmore on Evidence, 1747. His belief at the time is a circumstance to be taken into consideration in determining the question of fact at issue. 2 Enc. of Evidence, 296, 333-4, 385; 100 Ark. 269; 66 Ark. 500. Decedent's statements as testified to by Strait not self-serving declaration. 10 R. C. L. 983; 23 N. E. 271. Arkmo Lumber Co. did not comply with requirement of

the statute for fixing lien by filing a correct account in time, with description of the land to be charged with lien. C. & M. Digest, § 6922; 119 Ark. 43. Neither appellant probated his claim, as law requires. C. & M. Digest, §§ 106, 101; 69 Ark. 62. Arkmo Lumber Co., not having complied with the statute for fixing a lien, could only be a general creditor, and, having failed to comply with § 106, C. & M. Digest, is not entitled to judgment at all. Scroggin cannot set up a counterclaim barred by statute of nonclaim in defense of a suit by administratrix.

*Frauenthal & Johnson, Coleman & Gantt* and *Gray & Morris,* in reply.

Property was sufficiently described to comply with requirements of § 6922, C. & M. Digest, for fixing lien. 27 Cyc. 159, note 90; 3 A. S. R. 262; 45 A. S. R. 218; 29 Pac. 1090. Account properly probated. 97 Ark. 296. The itemized account attached to Scroggin's answer and cross-complaint was verified and proof sufficient of the claim. It is singular that appellee's counsel say nothing about the validity of an independent verbal agreement, as we claim, but spend all their force insisting that we are trying to modify a written lease contract by subsequent parol agreement. The answer raised no question relative to the improvements or the sufficient description of the land upon which improvements located. 27 Cyc. 159; 18 R. C. L. 948, § 84; 20 Enc. of Law, 422; 14 Ann. Cas. 688. Mechanic's lien law liberally construed. 49 Ark. 475; 51 Ark. 302; 133 Ark. 366; 54 Ark. 93; 129 Ark. 59; 63 Ark. 367. Affidavit to Arkmo Lumber Company's account a substantial compliance with verification for probate of claims against estate.

Wood, J. This action was instituted in the Jefferson Chancery Court by the Arkmo Lumber Company, hereafter called company, against the appellee, as executrix of the estate of J. H. McClung, deceased, to recover from the estate upon an account in the sum of $992.75, for lumber and material furnished McClung at

the request of his alleged agent, D. H. Scroggin. The company alleged that the material furnished was used in the construction of certain tenant houses and barns and improvements situated on the lands of McClung, which are described in the complaint, consisting of 1,380 acres in Jefferson County, Arkansas. The company alleged that within three months after the account became due it filed in the office of the clerk of the circuit court the account, duly verified, together with a description of the property upon which the lien was claimed, after giving ten days' notice in writing to D. H. Scroggin, agent, of such claim. The company prayed for judgment and that a lien be declared on the lands described, and that, unless the judgment be satisfied, the lands be sold, etc.

The company filed a supplemental complaint against the appellee in which it reiterated the allegations in its original complaint. It moved to have Scroggin made a party, which was done. The company, in its complaint against Scroggin, alleged that, in the year 1919, Scroggin was in the possession of the lands of McClung, and represented that he had authority to purchase the material for making the repairs and improvements on the lands; that the company furnished the material at Scroggin's request, and had taken necessary steps to establish its lien. It prayed in the alternative that, if it were determined that Scroggin was not the agent of McClung and not authorized by him to purchase the lumber, it have judgment against Scroggin for the amount of its claim, with interest.

The appellee answered, denying that the estate of her father, J. H. McClung, deceased, was indebted to the company. She denied that the company furnished any materials at the request or upon the authority of McClung or of Scroggin. She denied that Scroggin was the agent of, or that he had authority from, McClung to order materials as set forth in the complaint, and denied that the alleged materials were actually used, or entered into the construction of improvements situated on the

lands of McClung. She denied all other material allegations of the complaint. By way of cross-complaint, the appellee averred that the alleged agent, Scroggin, was a tenant of McClung, and that he falsely represented to the company that he had authority to purchase material and make the account on which the company's action is based. She alleged that the action could not be determined without the presence of Scroggin, and prayed that he be made a party, and that if, upon final hearing, judgment should be rendered against the estate of McClung, it have judgment over against Scroggin.

Scroggin answered the appellee's cross-complaint against him, and admitted that he was the tenant of McClung. He denied all other material allegations, and set up, by way of cross-complaint against the appellee, that the estate of McClung was indebted to him in the sum of $1,428, with interest, for labor and material in repairs and improvements which he placed upon the lands of McClung under his authority and direction. Scroggin attached to his cross-complaint an itemized account, duly verified, for which he prayed judgment against the appellee as executrix of the McClung estate. The appellee denied the allegations of Scroggin's cross-complaint.

The appellee moved to nonsuit the claim of the company on the ground that the same had not been duly authenticated and presented to the appellee, but, if so, then appellee averred that the company had not taken the necessary steps to entitle it to judgment and a lien on the lands under the statute.

There was introduced in evidence a "rent contract" entered into in March, 1918, between J. H. McClung, party of the first part, and D. H. Scroggin, party of the second part, by the terms of which McClung leased to Scroggin certain lands, including the lands described in the complaint, except certain small tracts that were then under leases to other parties. The lease was for a term of five years, beginning January 1, 1919, and ending De-

cember 31, 1923. The consideration for the lease was the sum of $7.50 per acre for all lands then cleared or that might be cleared by consent of the parties. The consideration was to be evidenced by notes for one-fourth of the annual rent, to be paid October first and fifteenth and November first and fifteenth of each respective year.

The lease, among other provisions, contained the following: "It is further mutually agreed by and between the parties hereto that the said party of the second part shall not have the right to construct any buildings or repairs or additions to any buildings or structures on said premises at the cost of the party of the first part, without his written consent first procured; and it is further agreed that the party of the first part shall not be responsible for any repairs, structures or improvements placed on said premises without such written consent, and that the cost thereof so incurred without such written consent shall be paid by the party of the second part, it being specifically agreed and understood between the parties hereto that the said party of the first part shall be liable only, in respect to repairs and improvements, for such repairs as he may himself desire to make and construct upon said premises and to the dwelling houses, which matter is left entirely to his own discretion, and for such other repairs as he may hereafter assume to pay for in writing, it being further agreed that no verbal contract for repairs shall be binding upon or create a liability against the party of the first part therefor."

There was a further provision that a failure upon the part of Scroggin to comply with all the terms of the contract should, at the option of McClung, constitute a breach and termination of the contract, in which event, if McClung so elected, he could have the work and labor provided for in the contract done, and the cost thereof should constitute liquidated damages to be paid by Scroggin, in addition to the rents as provided for in the contract in the year in which the breach should occur; and,

in case of a breach, McClung had the right to take immediate possession of the lands without process of law.

Notwithstanding this written lease, the appellants contend that it was the understanding between Scroggin and McClung, at the time the written lease was executed, that McClung was to place the premises in a good state of repair by rebuilding such houses and barns as were necessary, and repairing and re-roofing all old barns and houses, so that the buildings on the leased premises would be in good condition and in good repair at the time Scroggin was to take possession on the first day of January, 1919; that, pursuant to this understanding between them, McClung, who was in very poor health and therefore personally unable to supervise the tentative improvements which he contemplated before delivering the possession to Scroggin, entered into an independent verbal agreement with Scroggin in the fall of 1919, by which he authorized Scroggin, as his agent, to purchase the necessary material from the company and make the improvements contemplated, to pay for the work, and, when it was completed, to send McClung an itemized statement; and that McClung agreed he would send a check to cover the amount thus expended for him by Scroggin.

On the other hand, the appellee contends that no such verbal agreement was entered into by McClung and Scroggin, and that Scroggin therefore was not the agent of McClung, and had no authority to purchase the material from the company that went into the improvements.

1. This presents the first question in the case. It could serve no useful purpose to set out in detail the testimony that was adduced on this issue. Suffice it to say we have reached the conclusion that, if the oral testimony adduced by the appellants to sustain this issue is competent, then a decided preponderance of the competent testimony proves that Scroggin was authorized by McClung to purchase the material from the company

and to make the improvements on his lands; that Mc-
Clung constituted Scroggin his agent for that purpose.
We have held in several cases that the rule which ex-
cludes parol evidence for the purpose of varying a writ-
ten contract is confined to the parties to the contract,
and does not preclude a stranger to it from introducing
such evidence. *Talbot* v. *Williams,* 31 Ark. 411; *Gates &
Bro.* v. *Steele,* 48 Ark. 539; *Barfield Mercantile Co.* v.
*Connery,* 150 Ark. 428. In addition see *Allen* v. *Roulan,*
8 Ann. Cases, 347; 10 R. C. L. p. 1020, § 213, and cases
cited.

Now the company was an entire stranger to the
written contract between McClung and Scroggin. The
company's right to recover did not depend upon that
contract. The company proved by Scroggin and seven
other witnesses, whose testimony we do not feel at lib-
erty to discredit, that McClung authorized and directed
Scroggin to purchase the material for making repairs
and improvements on his land. While the declarations
of Scroggin would not be competent to prove his agency,
and his assumption of agency would not be sufficient to
establish it, yet his testimony that he was the agent of
McClung to make the improvements was competent tes-
timony. The testimony of certain witnesses introduced
on behalf of the appellee as to the statements of McClung
at and after the time that bills were presented to him
for the material purchased, and as to the contract be-
tween himself and Scroggin for repairs and improve-
ments, and as to the effect of the presentation of the
bills on his health, in the absence of any duly authorized
representative of the company, was incompetent. These
statements were not *res gestae;* they were not declara-
tions against interest, but, on the contrary, were self-
serving. This testimony was purely hearsay and in-
competent. Hence we reach the conclusion that the com-
pany is entitled to recover from the estate of McClung,
provided it has complied with the law for establishing
its claim against such estate.

McClung died in 1919. After his death the account of the company against his estate for the materials purchased was presented to his executrix on the 11th of September, 1919, and was disallowed by her. The demand against the estate of McClung was not properly authenticated to establish the claim in favor of the company as a general creditor of the estate. The company is a corporation, and the statute requires that, in case of a debt due a corporation, the cashier or treasurer shall make the affidavit for the verification of the claim. The affidavit here was substantially in the form required by the statute, but it was made by one H. M. Euart, and it is not recited therein, and not otherwise proved, that he was the cashier or treasurer of the company. Secs. 101 and 103, C. & M. Digest; *Wilkerson* v. *Eades,* 97 Ark. 296; *Kaufman* v. *Redwine,* 97 Ark. 546; *Saunders* v. *Rudd,* 21 Ark. 519.

However, the company contends that, inasmuch as it was seeking the satisfaction of its demand, not as a general creditor out of the general assets of the estate, but by virtue of a lien for materials furnished for making improvements on specific property, it was unnecessary to make the authenticating affidavit required by §§ 101 and 103, *supra,* and that a compliance with § 6922, *supra,* would be sufficient.

This court has held that these sections of our administration laws which relate to the authentication of demands against estates before suits are brought refer alone to suits against executors and administrators, as such, to subject the general assets of estates to payment of debts; that, in an action to foreclose a mortgage executed by a decedent, it is unnecessary to probate the claim against his estate, and hence the authenticating affidavit is not required before filing a bill to foreclose the mortgage. *Hall* v. *Denckla,* 28 Ark. 506; *Nicholls* v. *Barrett,* 30 Ark. 135; *Simms* v. *Richardson & May,* 32 Ark. 297; *McClure* v. *Owens,* 32 Ark. 443. See also *Edwards* v. *Hill,* 59 Fed. 722. The same rule and principle,

by analogy, is applicable to any action asserting an original, specific and absolute charge on land. The authentication and presentation of such claims to the administrator or executor of an estate for allowance and payment through the probate court are not prerequisite to the maintenance of an action for the enforcement of a specific lien, the right to which the plaintiff acquired during the life of the decedent. It follows that the death of McClung did not have the effect to deprive the company of its right to establish and enforce its lien against his estate, and that it·could do so, provided it complied with the requirements of the statute for perfecting its lien. In addition to the above authorities, see *Richardson v. Hickman,* 32 Ark. 407; *Barber v. Peay,* 31 Ark. 392.

Section 6922, C. & M. Digest, reads as follows: "It shall be the duty of every person who wishes to avail himself of this act to file with the clerk of the circuit court of the county in which the building, erection or other improvement to be charged with the lien is situated, and within ninety days after the things aforesaid shall have been furnished or the work or labor done or performed, a just and true account of the demand due or owing to him, after allowing all credits, and containing a correct description of the property to be charged with said lien, verified by affidavit."

The company filed an account in the clerk's office of Jefferson County showing the description of the lumber, the amount furnished and the price thereof, amounting to the sum of $992.75. This account is designated "a mechanic's lien in favor of the company against the property of J. H. McClung, deceased, Bessie Cantrell, administratrix." The account was verified by the affidavit of H. M. Euart, who stated that he was the duly authorized agent of the company, and knew, of his own personal knowledge, the facts set forth in his affidavit. He stated that the lumber and materials in the account were furnished within ninety days prior to the date of the filing of the account and were used in the erection

and repair of the following buildings and improvements
on land situated in Jefferson County (describing the
land), the whole tract, but not the improvements. He
stated that the account was a just and true account of
the materials furnished, and the demand due, after al-
lowing all credits, amounting to the balance claimed, and
that the description of the lands set forth was a correct
description of the property to be charged with the me-
chanic's lien.  The record also shows that the company
filed in the office of the circuit clerk of Jefferson County
a notice to D. H. Scroggin, as agent of J. H. McClung,
and Bessie Cantrell, as administratrix of the estate of
McClung (and which was served on D. H. Scroggin but
not on appellee), that the company had a claim for a
mechanic's lien against the following described proper-
ty (describing generally the lands and the buildings lo-
cated thereon), for the sum of $992.75 for materials
furnished by the company to McClung, which material,
the notice recites, was furnished for use in the construc-
tion and repair of the said buildings located upon the
above described property, and the notice concludes:
"You are hereby notified that, after ten days from date
hereof, the Arkmo Lumber Company will file with the
clerk of the circuit court of said county a just and true
account of said demand, after allowing all credits, veri-
fied by affidavit."

The appellee contends that the above proceedings
were not a sufficient compliance with the statute for the
perfecting of the company's lien against the lands de-
scribed in the claim for a lien, which are the same as
those described in the complaint; that the same is de-
fective as a lien because it fails to describe the specific
improvements into which the materials entered, and the
specific acre of ground upon which the improvements
were situated.

This court, in the case of *Conway Lumber Co.* v.
*Hardin,* 119 Ark. 43, held that there must be a substan-
tial observance of the statutory requirements in order

to perfect a lien under the mechanic's lien law. But the same case holds that a literal compliance with the statute is not required. The company furnished material, according to the proof of this record, under contract directly with Scroggin, the agent of McClung. The company was therefore not a subcontractor under the statute (§ 6935, Crawford & Moses' Digest), and was not required to give to the appellee, the executrix of the estate of McClung, the ten days' notice specified in § 7917, Crawford & Moses' Digest. *Leifer Mfg. Co.* v. *Gross,* 93 Ark. 277.

The statute (§ 6906, C. & M.) provides that, upon complying with the provisions of the act, the parties mentioned shall have "a lien upon such building, erection or improvement, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of one acre." It will be observed that the claim for a lien filed only describes the lands according to the government subdivisions constituting the McClung plantation, consisting of 1,380 acres, more or less. It does not describe any particular tract or acre on which the buildings are situated, nor any particular building or buildings upon which the lien is sought to be established. A majority of the court have reached the conclusion that, while the mechanics' lien law should be liberally construed with a view to advancing the remedy, nevertheless the account or claim for a lien is too vague and indefinite, since it does not describe the particular land or the particular buildings upon which the lien is sought to be established, and it does not, therefore, comply with §§ 6906 and 6922, Crawford & Moses' Digest. *Bedsole* v. *Peters,* 79 Ala. 133; *Montgomery Iron Works* v. *Darman,* 78 Ala. 218; *Ransom* v. *Sheehan,* 78 Mo. 668; *Wright* v. *Beardsley,* 69 Mo. 548; *Williams* v. *Porter,* 51 Mo. 441.

The majority does not mean to say that either the acre of land on which the lien is sought, or the building thereon, must necessarily be described in any particular form. All that is essential is that the acre of land or the

building be designated in such language as will afford information concerning the situation of the property to be charged with the lien. Of course, if the building be described so as to properly designate its location, this is sufficient, for the statute itself fixes the quantity of land to be charged.

The writer, however, is of the opinion that the correct rule, supported by the better reason as well as the weight of authority, is announced in 27 Cyc. 159, as follows: "As a general rule the fact that the claim or statement describes more land than is subject to the lien does not defeat the lien as to the land properly subject thereto, if there is no fraudulent intent and no one is injured thereby; and, where the tract on which the improvement is erected is of greater area than the statute allows to be subjected to the lien, a claim or statement describing the entire tract is sufficient, and it is not necessary to specifically describe a portion thereof which is of the permitted area, as in such case it is for the court to decide what portion of the land is to be subjected to the lien." See many cases cited in note to text. A majority of the court therefore has reached the conclusion that, as between the company and the estate of McClung, the company is not entitled to recover. The writer, however, is of the opinion that the company has established its claim for a lien; that the particular acre and the particular buildings could have been delineated by the testimony at the hearing.

2. While the company is not entitled to recover from the estate of McClung, it does not follow that it cannot recover from Scroggin. The company alleges in its complaint against Scroggin that he falsely represented to the company that he had authority from McClung to purchase the lumber and materials for which a lien is claimed. Scroggin denies that he falsely represented that he was the agent of McClung, and avers that he was the duly authorized agent of McClung to purchase the materials in controversy. It is conceded there-

fore that Scroggin purchased of the company the material in controversy. The testimony of Scoggin on this issue was to the effect that he was the agent of McClung, and had authority to, and did, purchase the materials as such agent, and the testimony of seven witnesses tended to corroborate his testimony, which, as we have seen, was sufficient to establish that fact as between the company and McClung, because the appellee, as executrix of the McClung estate, could not use the written contract between McClung and Scroggin to rebut such testimony. It was incompetent for that purpose because it was in the nature of self-serving evidence, and the company was not privy to it, nor bound by it. But in the action between the company and Scroggin the contract between Scroggin and McClung is competent to rebut the testimony of Scroggin. Scroggin admitted that he executed this contract, and, as we construe the contract, it forbids Scroggin from acting as the agent of McClung in making the repairs and improvements on the McClung plantation, unless authority to act as such agent was given by McClung in writing. The contract in the action between the company and Scroggin was in the nature of a declaration or admission against his interest, and it was entirely competent for the purpose of controverting the testimony of Scroggin and proving that he did not have the authority he claimed to have to purchase the materials in controversy as the agent of McClung.

A majority of the court therefore are convinced that a preponderance of the evidence proves that Scroggin did not purchase the materials of the company as the agent of McClung. Scroggin therefore was liable to the company, and the trial court ruled correctly in so holding.

3. This brings us, in the last place, to the question as to whether or not Scroggin is entitled to recover on his cross-complaint against the estate of McClung. Scroggin alleged that he had expended for materials and labor in making repairs and improvements on the McClung plantation the sum of $1,428.89. The appellee de-

nied liability, and in defense of this claim of Scroggin set up the written contract, *supra,* between McClung and Scroggin, and contends that to permit Scroggin to establish his claim by oral testimony is to contravene the familiar rule that oral testimony cannot be introduced to contradict, add to, or modify the terms of a written contract. The lease contract was for five years, and therefore within the statute of frauds, § 4862, subdiv. 5, C. & M. Digest. A contract which the statute of frauds requires to be in writing cannot be contradicted, modified or changed by a subsequent oral contract. We have often ruled that parties to a written contract may abandon the same by subsequent parol agreement, or they may rescind it in part or *in toto,* by substituting a new agreement therefor. *Thompson* v. *Short,* 157 Ark. 314; *Caldwell* v. *Dunn,* 156 Ark. 126, and cases there cited.

Scroggin invokes the doctrine of these cases to justify the introduction of parol testimony to prove that he and McClung, after the written contract was executed, entered into an oral contract by which McClung authorized him to make the repairs and improvements upon which the claim is based. But an examination of the above cases will show that the doctrine therein announced was concerning contracts which, to be valid, were not required to be in writing. The law is aptly stated in the case of *Boyd* v. *Big Tree Ranch Co.,* 133 Pac. (Cal.) 623-624, as follows: "Were it possible to make an oral modification of a contract which, by the statute of frauds, is required to be in writing, and enforce such oral modification, the door would be open for the perpetration of such frauds as the statute seeks to prevent. If the contract is in writing, though not required to be, as where the subject-matter is not within the statute of frauds, it may of course be changed by new subsequent agreement in writing." *Bonicamp* v. *Starbuck,* 106 Pac. (Okla.) 839; *Augusta So. Ry. Co.* v. *Smith,* 33 S. E. (Ga.) 28-29; 1 Beach on Contracts, § 577; Browne on

Statute of Frauds, § 411; 29 A. & E. Ency. of Law, and other authorities cited in appellee's brief.

McClung and Scroggin could have entered into a valid parol contract for the repairs and improvements on the McClung plantation, but they did not elect to do so. They chose to embody the contracts as to repairs and improvements in the written contract of lease. Having thus made it a part of the written contract of lease, they could not afterwards take it out and substitute a new parol contract as to the improvements without modifying the written lease contract, which the statute of frauds required to be in writing. The contract was executed in March, 1918, and took effect in January, 1919. Scroggin made the improvements and repairs after he took possession under his written contract. These repairs and improvements grew out of his relation to McClung as a tenant, and were referable to the written contract. This lease contract could not rest partly in writing and partly in parol. It had to be in writing, and, if the provisions as to the repairs and improvements were taken out, it would have the effect of destroying the mutuality of the entire contract, for it could not be said that the parties would have entered into the contract but for these provisions. The provisions of the contract as to the repairs and improvements leave no doubt that it was the intention of McClung that, after the contract took effect, no improvements could be made upon the plantation by Scroggin except such as were made by his written consent.

A majority of the court therefore are convinced that Scroggin has not established his claim against the estate of McClung by any competent testimony, and the trial court ruled correctly in so holding. The decree is therefore in all things correct, and it is affirmed.

McCULLOCH: C. J., (dissenting). I agree with the majority in all that is said with respect to the claim of the lumber company against the estate of McClung. The company established its claim by abundant proof, but lost its claim by failing to verify it in accordance with

the statute, and lost its lien by failing to sufficiently describe the property in filing the claim.

This being true, I fail to find any just grounds for sustaining the decree in favor of the lumber company against Scroggin. The only reason stated in the opinion of the majority is that the contract between Scroggin and McClung was "in the nature of a declaration or admission against interest," and for that reason the majority are convinced "that a preponderance of the evidence proves that Scroggin did not purchase the material of the company as the agent of McClung." How can this be true in the face of the conclusion of the majority on the issue between the company and the McClung estate that "a decided preponderance of the competent testimony proves that Scroggin was authorized by McClung to purchase the material from the company and to make the improvement on the land?" The testimony is precisely the same, except that the majority does not consider the contract between Scroggin and McClung in determining the issue beween the company and McClung's estate, but does consider it on the issue between the company and Scroggin. I do not think that the contract has any probative force at all in determining the issue whether or not McClung subsequently authorized Scroggin, as his agent, to purchase the material from the company. With the incompetent testimony as to McClung's declaration excluded from the consideration (the majority hold it to be incompetent), the testimony is undisputed that McClung did authorize Scroggin to make the purchases as his agent. Besides the testimony on this subject of Scroggin and his brother, there were five disinterested witnesses who testified that they were present and heard McClung direct Scroggins, as his agent, to purchase the material from the company to repair the houses on the farm. This is not disputed. The only theory upon which the company could have held Scroggin liable for the price of the material was that he assumed to act under authority as McClung's agent,

which did not exist. *Dale* v. *Donaldson Lumber Co.,* 48
Ark. 188. But the complete answer to this is that Scrog-
gin was in fact authorized by McClung to purchase the
material, and the company had a valid claim against
McClung's estate and a lien on the land, but lost both
the claim and the lien by its own negligence in failing to
comply with the statutes with reference to enforcing the
same.

It also seems clear to me that Scroggin is entitled to
recover on his claim against McClung's estate, and that
his claim is established by undisputed testimony. But
the majority decide that Scroggin is barred from re-
covery by the statute of frauds. This conclusion is, I
think, against the great weight of authority on the sub-
ject, which is to the effect that a new oral agreement, the
subject-matter of which is not within the statute (such an
agreement as merely relates to the method or time
of performance of a prior written contract), is not
void under the statute because it is a modification
of a former written contract between the same
parties. *Murray* v. *Boyd,* 165 Ky. 625; *Rank* v.
*Garvey,* 66 Neb. 767; *Stamey* v. *Hemple,* 173 Fed.
61; *Hurlburt* v. *Fitzpatrick,* 176 Mass. 287; *Norton* v.
*Simond,* 124 Mass. 19; *Cumming* v. *Arnold,* 3 Metc.
(Mass.) 486; *Gault* v. *Brown,* 48 N. H. 183; *Richardson*
v. *Cooper,* 25 Me. 450; *Negley* v. *Jeffers,* 28 Ohio St. 90;
*Knibs* v. *Jones,* 44 Md. 396; *Raffensberger* v. *Cullison,*
28 Pa. St. 426.

In the present case the new oral contract is not only
one not within the statute of frauds, but the material part
of it relates to matters not covered in the original con-
tract. It will be seen from a perusal of the original con-
tract that it binds neither party to the making of repairs.
It is entirely negative in this respect, and merely pro-
vides that the lessor (McClung) should not be bound
except upon his consent in writing. Now the new oral
contract was independent of the old contract, in that it
was an agreement on the part of McClung to make cer-

tain repairs, the consideration being the benefit to his own farm. It was not a modification of the old contract except as to the provision about the written consent of the lessor, for the old contract, as before stated, did not require either party to make repairs.

If any other reasons were needed to support Scroggin's right to recover, it is found in the fact that Scroggin actually performed the new agreement with respect to making repairs, and in doing so expended the sum of money which he seeks to recover. The authorities are to the effect that, even where the contract is held to be within the statute, performance takes it out of the operation of the statute. 25 R. C. L. p. 711; *Conley* v. *Johnson*, 69 Ark. 513; note to *Bonicamp* v. *Starbuck,* L. R. A. 1917-B p. 164; *Thompson* v. *Poor,* 147 N. Y. 402.

My conclusion therefore is that Scroggin should recover from the McClung estate the amount of his claim, and that he is not liable to the lumber company.