# CASES DETERMINED

## IN THE

# SUPREME COURT OF ARKANSAS

---

SIMS *v.* AMERICAN NATIONAL BANK OF FORT SMITH.

Opinion delivered February 20, 1911.

1. BILLS AND NOTES—LIABILITY OF DRAWEE.—The payee of a check, unaccepted, cannot maintain an action upon it against the bank upon which it was drawn, as there is no privity of contract between them. (Page 7.)

2. SAME—LIABILITY OF DRAWER OF CHECK.—The action of a drawee bank in paying a check upon a forged indorsement purporting to be the payee's did not constitute an acceptance thereof nor release the drawer from its payment. (Page 8.)

3. SAME—NOTICE OF PRESENTMENT AND NONPAYMENT.—Where a drawee bank paid a check upon a forged indorsement, and the check was returned to the payee who, at the drawer's suggestion, again presented the check to the drawee bank which refused payment, the drawer was not discharged by the payee's failure to give notice of presentment and nonpayment, as such notice would have been of no benefit to the drawer. (Page 9.)

Appeal from Sebastian Circuit Court; *J. S. Maples,* Judge on exchange; reversed.

STATEMENT BY THE COURT.

Appellants brought this action against the American National Bank of Fort Smith, Ark., on a draft for $500, which Alice Sims had purchased from said appellee, said draft being drawn upon the Mechanics-American National Bank of St. Louis, and payable to the order of Jesse Sims.

The complaint alleged "that on the 14th of September, 1909, the said plaintiff, Alice Sims, bought from the defendant, the American National Bank of Fort Smith, Ark., a draft on the Mechanics-American National Bank of St. Louis, Mo., for $500,

payable to the order of her co-plaintiff, Jesse Sims, and said Alice Sims paid said American National Bank the sum of $500 for said draft, and said draft was thereupon delivered to plaintiff, Alice Sims. A copy is attached and marked, 'Exhibit A.' That the money represented by said draft belonged to said Alice Sims. That said Jesse Sims caused said draft to be presented to said Mechanics-American National Bank of St. Louis, Mo., for payment with his genuine indorsement, and said Mechanics-American National Bank refused to pay the same. That afterwards the said Alice Sims demanded payment of said draft of said American National Bank, and it refused to pay same." Prayer for judgment for the amount with interest.

The answer admitted the purchase of the draft and payment of the money as alleged; denied that Jesse Sims presented the draft for payment to the Mechanics-American National Bank, and that said bank refused to pay same; alleged that it sold the draft upon said drawee bank and at the time had funds in said bank upon which it had a right to draw to a larger amount than the draft, and immediately credited said drawee bank with the amount of said draft and paid the same to the said Mechanics-American National Bank of St. Louis, the drawee, before said draft was delivered to the payee, Jesse Sims; alleged upon information that Alice Sims sent the draft to some one at Nacona, Texas, by the name of Jesse Sims, and that the Farmers & Merchants National Bank at Nacona, Tex., purchased same from some one representing himself to be Jesse Sims, and cashed and paid full value therefor after said draft had been indorsed by said Jesse Sims or the party representing himself to be Jesse Sims; that thereafter said draft was paid by the drawee in the due course of business; that it discharged its full duty by delivery to Alice Sims of a good and valid draft upon the drawee bank, in which it had funds sufficient to meet the payment, "and which drawee did pay and cash said draft when the same was presented to it, purporting to have been indorsed by the payee Jesse Sims;" that plaintiff failed to notify defendant of the refusal of the drawee bank to pay said draft after its presentment.

The testimony tended to show that on the 14th day of September, 1909, Alice Sims purchased from the appellee a draft for $500 payable to the order of Jesse Sims and drawn on the

Mechanics-American National Bank of St. Louis; that she, pursuant to an agreement had with her brother and co-plaintiff, Jesse Sims, sent said draft to Jesse Sims in a registered letter, addressed to Jesse Sims at Nacona, Texas, intended for her said brother and co-plaintiff; that the registered letter containing said draft was delivered by a rural route carrier at Nacona, Tex., to some person other than the plaintiff Jesse Sims, which person represented himself to such carrier to be Jesse Sims; that said person to whom said letter was delivered by said carrier, took the draft therefrom, wrote on the back thereof the words "Jesse Sims," and presented the same to the Farmers & Merchants National Bank of Nacona, Tex., which said bank took said draft, and gave to said person so presenting the same the sum of $50 and deposit certificate for $450; that the indorsement of the name "Jesse Sims" on the back of the draft was a forgery, and was unauthorized by Jesse Sims, the brother of Alice Sims. The said Farmers & Merchants National Bank indorsed said draft, and guarantied all prior indorsements, and deposited the same with the Merchants & Planters Bank of Sherman, Tex., which on September 20, 1909, indorsed it and guarantied all indorsements, and deposited it with the National Bank of Commerce of St. Louis, Mo. The said draft was presented on the 22d day of September, 1909, to the drawee, said Mechanics-American National Bank, and paid by it, and the amount, $500, charged up against the American National Bank of Fort Smith, Ark., the drawer, which had funds in the drawee bank more than sufficient to pay said draft. In the ordinary course of business the draft was returned to the appellee as a voucher. The appellee was notified by appellant, Alice Sims, that she had received a letter purporting to be from her brother, which she regarded as a forgery. The testimony was conflicting as to whether this occurred before or after the return of the draft to appellee. In the latter part of January, 1910, the appellee delivered to Alice Sims the said draft which had been returned to it as a voucher, and the same was indorsed by Jesse Sims, and it was presented for payment to the Mechanics-American National Bank of St. Louis, and payment was by said bank refused, because it had already paid said draft once. On February 14 appellants demanded the payment of $500, the sum for which the draft was issued, from the appellee,

the American National Bank of Fort Smith, at the time advising
of its presentment to the drawee and its refusal to pay, and pay-
ment of said sum was refused.

The draft reads:

"American National Bank

"No. 25763

"Fort Smith, Ark., Sept. 14, 1909.

"Pay to the order of Jesse Sims                                $500.00

"five hundred and no-100 dollars.

"E. M. Dickerson,

"Asst. Cashier.

"To Mechanics-American National Bank of St. Louis, Mo.

[Indorsed on the back]                    "Jesse Sims."

"Jesse Sims."

"Pay to the order of any bank of banker,
previous indorsements guarantied, Sept.
20, 1909, Merchants & Planters National
Bank, Sherman Tex.

"C. B. Dorchester, Cashier."

"Pay to the order of any bank or banker,
all prior indorsemnts guarantied, Farmers
& Merchants National Bank.

"................Texas

"................Cashier."

Another indorsement is so dim it cannot be deciphered.

Alice Sims testified when she got the letter from Nacona,
Texas, acknowledging receipt of the draft, she knew it was not
from her brother, and went to the American National Bank, and
told Mr. Ball, the cashier, that she had received such a letter, and
was sure her brother did not get the money; that she gave him
the letter later on, she thought, and he said it was their funeral if
somebody cashed it without being identified. On September 25,
three days after the draft was paid by the drawee on the 22d,
she wrote the bank at Nacona, Texas, asking information about
the person for whom it cashed the draft on the forged indorse-
ment. On November 3, 1909, appellee notified the drawee bank
at St. Louis that the indorsement on this draft was a forgery, and
asked that the amount $500 be placed to appellee's credit, and that
it proceed against the bank from whom it received the draft, advis-

ing of a letter it had received from the cashier of the bank at Nacona, Texas. On November 4, the drawee bank replied, asking that an affidavit from the payee, Jesse Sims, be furnished that the indorsement had been forged, upon receipt of which it said the matter would have attention. On November 8 appellee sent the old draft, with the requested affidavit from Jesse Sims, to the Mechanics-American National Bank of St. Louis with this request: "Kindly give us credit for this amount, as there is no question whatever but that the indorsement is a forgery." On the 11th follows another letter to the drawee by appellee, complaining of the delay in allowing the credit, and stating: "We are charging the amount to your account today, and will ask you to give us credit for the same." On the 17th of November the St. Louis bank returned the old paid draft to the Fort Smith bank, declining to give credit for it.

Appellee bank afterwards turned this draft over to appellant, expressing the hope that they would be able to get the Texas bank or the St. Louis bank to pay it. It was then indorsed by Jesse Sims, appellant, who demanded payment of the drawee bank, which was refused because it had already paid the draft.

The case was submitted to the court without a jury, and after making findings of fact the court made the following declarations of law, to which the appellants excepted:

"1.  That the action of the Mechanics-American National Bank in charging up the amount of $500 against the defendant on account of said draft constituted an acceptance of the same on the part of the said Mechanics-American National Bank, upon which it is liable to the plaintiffs.

"2.  That the defendant is not liable in this action to plaintiffs."

And rendered judgment dismissing the complaint and for costs, against appellants, from which this appeal is brought.

*Youmans & Youmans,* for appellants.

1.  The action of the Mechanics-American National Bank in charging up the amount of the draft against the appellee did not constitute such an acceptance by that bank as would warrant a suit by appellants against it, but their suit must be to recover from appellee.    94 U. S. 343 ; 143 Ill. App. 625 ; 40 Vt. 733 ; 107 Mass.

45; 13 Allen, 444; 23 La. Ann. 49; 46 N. Y. 82; 10 Wall. 152; 34 Md. 574; 5 Col. 189; 55 Mich. 203; 62 Mich. 348; 54 O. St. 68; 82 N. Y. 1; 75 Atl. 313; 79 Mo. 168; 79 Mo. 251; 83 Mo. 337; 71 Mo. App. 132; Zane on Banks and Banking, § § 146, 147. The holding in Pennsylvania and Tennessee, 73 Pa. St. 483 and 88 Tenn. 380, contrary to the above, is contrary not only to the case on which those courts rely, 94 U. S. 343, but also to reason and the weight of authority.

2. Regardless of whether or not there was such an acceptance, appellants can maintain suit against appellee for the amount paid for the draft. 82 N. Y. 1; 91 N. Y. 111; 119 N. Y. 195; 75 Atl. 313, and authorities cited.

3. While, under the statutory law, Kirby's Dig., § § 507, 508, the draft in question may be termed a bill of exchange and subject to the rules of law governing such bills, yet those rules do not apply to a bill of exchange which has been lost or upon which an indorsement has been forged. In such a case the mere failure to give notice by protest or otherwise is not sufficient to constitute a defense. 75 Atl. 313; 67 Ark. 249.

4. This record does not present a case for the application of the rule that "where one of two innocent parties must suffer by the fault of a third, that one shall sustain the loss who put it into the power of the third to occasion it." It is *not* negligence for one to fail to anticipate that a crime will be committed. 49 Ark. 45.

*Hill, Brizzolara & Fitzhugh,* for appellee.

1. Appellants cannot recover against appellee, because (1) plaintiff, Alice Sims, received all she paid or contracted for, viz., a good and valid draft for $500. If, after she received this draft, she sent it to the wrong person or it passed from her into the hands of an impostor who defrauded her out of the money, appellee is not responsible for that loss. Morse on Banks and Banking, § § 491, 493, 494, 499, 500, 506, 510, 511.

2. Daniel, Neg. Inst., § § 1637, 1638; Byles on Bills, § 96, note 1; Randolph, Com. Paper, § § 589, 599, and as to latter section, note 126 and authorities cited; 47 S. W. 234; 88 Tenn. 379; 92 Tenn., 154; 120 Ind. 514; 73 Pa. 473; 55 Wis. 364; 19 O. St. 526; 20 *Id.* 234. After a check or draft is accepted by the drawee

the drawer is released from further liability.  1 Morse on Banks and Banking, § 414; 4 Baxt. 414; 52 N. Y. 350; 107 N. Y. 179; 108 Pa. St. 1.

3. Appellants cannot recover because, this being foreign paper, plaintiff failed to have the draft protested and notice of the dishonor given to appellee.  22 Ark. 315; 23 Ark. 633; 37 Ark. 276; 53 Ark. 519; 13 Ark. 394; 26 Ark. 155; Joyce on Defenses to Com. Paper, § 572; 25 Ark. 67.

KIRBY, J., (after stating the facts). Can the payee of a check or draft whose indorsement was forged, after payment by the bank upon which it was drawn upon such forged indorsement, maintain an action against the drawee to recover the amount of it?

The question is before this court for the first time.  There are many authorities holding that the payee of a check, unaccepted, may bring suit against the drawee, upon the theory that it has the amount of the draft in its hands subject to the order of the drawer which is in effect by the check assigned to the payee, but the great weight of authority is against the proposition.  Zane on Banks and Banking, § § 146, 147; Morse on Banks and Banking, § 493.

The precise question was answered in the negative by the United States Supreme Court in *First National Bank* v. *Whitner,* 94 U. S. 343, 24 L. Ed. 230, the court saying: "We think it is clear, both upon principle and authority, that the payee of a check, unaccepted, cannot maintain an action upon it against the bank on which it was drawn;" and, continuing in answer to a like contention made there that such unauthorized payment constituted an acceptance, that court, said:

"It is further contended that such an acceptance of the check as creates a privity between the payee and the bank is established by the payment of the amount of this check in the manner described.  This argument is based upon the erroneous assumption that the bank has paid this check.  If this were true, it would have discharged all of its duty, and there would be an end of the claim against it.  The bank supposed that it had paid the check; but this was an error.  The money it paid was upon a pretended and not a real indorsement of the name of the payee.  The real indorsement of the payee was as necessary to a valid payment as the real signature of the drawee; and in law the check remains

unpaid. Its pretended payment did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. The state of the account was the same after the pretended payment as it was before.

"We cannot recognize the argument that a payment of the amount of a check or sight draft under such circumstances amounts to an acceptance, creating a privity of contract with the real owner. It is difficult to construe a payment as an acceptance under any circumstances. The two things are essentially different. One is a promise to perform an act, the other an actual performance. A banker or an individual may be ready to make actual payment of a check or draft when presented, while unwilling to make a promise to pay at a future time. Many, on the other hand, are more ready to promise to pay than to meet the promise when required. The difference between the transactions is essential and inherent."

In such matters it is important that uniformity should obtain in the different jurisdictions, and that but one rule should be applied to the business dealings of the citizens of the different States with each other, so closely interwoven is such business activity and association with the vast commercial life of the nation; and since the United States Supreme Court is the highest court of last resort, and does not follow the decisions of the State courts upon general banking and commercial questions, we will follow it. *Exchange National Bank* v. *Coe*, 94 Ark. 387.

We hold that there was no privity of contract between the holder of this draft, which had been paid by the drawee bank upon the forged indorsement of the payee, which would entitle him to bring suit against said drawee bank, and that its action in the payment of such draft did not constitute an acceptance thereof that would release the drawer from its payment. See, also, *Bellows Falls Bank* v. *Rutland Co. Bank*, 40 Vt. 377; *Carr* v. *National Security Bank*, 107 Mass. 45; *Dana* v. *Third National Bank*, 13 Allen, 445; *Case* v. *Henderson*, 23 La. Ann. 49; *Aetna National Bank* v. *Fourth National Bank*, 46 N. Y. 82; *Bank of Republic* v. *Millard*, 10 Wall. 152; *Moses* v. *Franklin Bank*, 34 Md. 574; *Colorado Nat. Bank.* v. *Boettcher*, 5 Col. 189; *Grammel* v. *Carmer*, 55 Mich. 203; *Brennan* v. *Merchants' & Manufacturers' Nat. Bank*, 62 Mich. 348; *Cincinnati, H. & D. Rd. Co.* v. *Bank*, 54 Ohio St.

68; *Thomson* v. *Bank of British North America,* 82 N. Y. 1; *Pratt* v. *Union Nat. Bank,* 75 Atl. 313; *Merchants' National Bank* v. *Coates,* 79 Mo. 168; *Dickinson* v. *Coates,* 79 Mo. 251; *Coates* v. *Doran,* 83 Mo. 337.

The drawee bank had no right to pay out the money of the drawer upon his draft upon the forged indorsement of the payee thereof, nor to charge such sum of money so wrongfully paid to the account of the drawer, and is, of course, liable to it for said amount.

There is nothing in the contention here that appellee had no notice of the refusal of the drawee bank to accept and pay this draft when it was presented by the payee, long after it had already been paid by said drawee bank upon the forged indorsement and returned as a voucher to the drawer bank, who had been notified before it was turned over after such receipt by it, to the payee, that the drawee had already paid said draft, and refused to allow the drawer any credit for same upon its demand therefor, on account of it having been paid upon the indorsement of a person not entitled to receive it. Appellee knew the payee's indorsement had been forged; it knew that the drawee bank had wrongfully paid said draft upon such forged indorsement, and refused to repay the same to it, the drawer, and declined to give it credit therefor. Knowing all these things, a notice of its presentment afterwards, which was made by the payee in effect for the benefit of appellee, if not at its suggestion, was not required, and could have been of no benefit to it. *Auten* v. *Manistee National Bank,* 67 Ark. 249.

The appellee was liable to the payee of the draft for the amount of it, and, its drawee having failed and refused to pay it, it can only discharge such liability by the payment thereof itself. The facts being virtually undisputed, and there being no useful purpose to serve by remanding this cause, the judgment is reversed, and judgment will be rendered here in favor of appellants for the amount of the draft, $500, with interest.

It is so ordered.