DILLEY v. SIMMONS NATIONAL BANK.

Opinion delivered May 19, 1913.

1. ELECTION OF REMEDIES—ACTIONS ON CONTRACT AND TORT.—The doctrine of election does not apply to two actions, one upon a contract and the other for fraud in its procurement, since both are an affirmance of the contract; so an action on a note which was procured by fraud, is not such an election of remedies as to preclude an action against defendant later, for fraud in procuring the loan. (Page 344.)

2. BANKRUPTCY—DISCHARGE—DEBTS PROCURED BY FRAUD.—Under the Federal Bankruptcy Act of February 5, 1903, amending the act of July 1, 1898, which provides that a discharge releases a bankrupt from his provable debts "except such as * * * are liabilities for obtaining property by false pretenses or false representations;" held, debts procured through fraud are not released whether they are reduced to judgment or not. (Page 346.)

3. LIMITATION OF ACTIONS—DISCOVERY OF FRAUD.—Where plaintiff did not discover defendant's fraudulent act until the spring of 1909, but filed his complaint on April 13, 1911, the action is not barred by the statute of limitations of three years. (Page 349.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

STATEMENT BY THE COURT.

The plaintiff, Simmons National Bank, instituted this action in the circuit court against F. L. Dilley to recover damages on account of fraud and deceit. The facts in the case, as developed by the plaintiff, are substantially as follows:

On the 4th day of February, 1907, plaintiff was induced to make a loan of three thousand dollars to the defendant by his statement that he owned fourteen hundred and ninety-six shares of the capital stock of the Dilley Foundry Company, a corporation, and that said stock was unencumbered, which proved to be untrue. The defendant gave plaintiff a note for the three thousand dollars, indorsed by the Dilley Foundry Company. On October 14, 1907, plaintiff loaned to the Leola Lumber Company the sum of ten thousand dollars, and took the note of the lumber company for that amount, indorsed by F. L. Dilley and Lynn Butler. Plaintiff was induced to

make this loan by the statement of the defendant that he owned about half of the stock of the lumber company, and that the lumber company owned thirty-five million feet of timber, which latter statement proved to be untrue. On the 15th day of February, 1908, plaintiff loaned to the Leola Lumber Company the sum of five thousand dollars, evidenced by a note of the same date, indorsed by F. L. Dilley and the Dilley Foundry Company. It was induced to make this loan by the statement of the defendant that he owned fourteen hundred and ninety-six shares of stock in the Dilley Foundry Company, and that the Leola Lumber Company owned thirty-five million feet of timber. Plaintiff learned in March, 1909, that the statement as to the ownership by the defendant of the foundry company's stock unencumbered, was untrue, and in April, 1909, learned that the statement that the lumber company owned the timber was untrue. The notes were renewed from time to time until 1909, when the plaintiff brought suit in the State courts against the defendant and the Dilley Foundry Company upon the three thousand dollar note and against the defendant, the lumber company and the Dilley Foundry Company on the five thousand dollar note, and against the defendant and the lumber company on the ten thousand dollar note.

The defendant was adjudged a bankrupt, and on March 9, 1911, was discharged from all debts and claims made proveable under the Federal Bankruptcy Act. The judgment expressly excepted from the order of the discharge of such debts as are by law excepted from the operation of the discharge in bankruptcy. In the bankruptcy proceedings, the plaintiff proved its debt as evidenced by all of said notes.

The defendant admitted that he told the plaintiff, for the purpose of securing the loan in question, that he owned 1,496 shares of stock in the Dilley Foundry Company, but denied that he told its officers that said stock was unencumbered. He also denied that he told them that the Leola Lumber Company owned thirty-five million feet of timber.

The plaintiff filed objections to the defendant's discharge in bankruptcy on the ground that the loans made by it were procured by the false representations of the defendant, but afterward withdrew its objection.

The case was tried before a jury and there was a verdict and judgment for the plaintiff. The defendant has appealed.

*Bridges & Wooldridge,* for appellant.

1. An election of one remedy with knowledge of the facts is a waiver of another and inconsistent remedy. 52 Ark. 458-467; 78 *Id.* 501-3; 70 *Id.* 319, 323-4; 49 *Id.* 94; 101 *Id.* 95-99; 15 Cyc. 260; 171 Fed. 755; 195 U. S. 176; 205 *Id.* 183; 195 U. S. 606; 201 Fed. 557; 183 N. Y. 271; 76 N. E. 25.

2. The discharge in bankruptcy was a complete defense. 195 U. S. 176; 205 *Id.* 183; 183 N. Y. 267.

*W. F. Coleman* and *W. B. Alexander,* for appellee.

1. The doctrine of election does not apply. 7 Enc. Pl. & Pr. 362; 3 Abb. N. Cas. 92; 118 N. Y. 228; 43 S. E. 482; 95 N. Y. 337; 70 Ark. 319; 49 *Id.* 94; 47 S. E. 711; 75 N. Y. 40; 114 *Id.* 349; 44 C. C. A. 309; 8 Am. B. R. 196; 70 App. Div. 166, 75 N. Y. Supp. 40, 175 N. Y. 501.

2. The action for deceit was not barred by the proceedings in bankruptcy. 79 N. Y. 390; 68 App. Div. 179; 172 Fed. 109; 96 C. C. A. 314; 67 N. E. 1082; 8 Am. Bank. Rep. 501; 92 Fed. 912; 96 *Id.* 597.

3. There is no error in the instructions. 6 L. R. A. 149, and note; 57 L. R. A. 108; 30 Ark. 334; 98 *Id.* 44; 99 *Id.* 438; 100 *Id.* 144.

Hart, J., (after stating the facts). Counsel for the defendant invoke the defense of waiver by election. They contend that inasmuch as the plaintiff brought suit in the State courts against the defendant to recover on the note, they are now precluded from suing him in an action for fraud and deceit. We can not agree with their contention. The two remedies are not inconsistent. Plaintiff, in the present suit, admits the contract, and that it is bound by it. Its action is to recover damages on account

of fraud and deceit, and its complaint alleges that it was induced to make the loan by reason of certain alleged false representations made by the defendant. The doctrine of election does not apply to two actions, one upon a contract, and the other for fraud in its procurement, since both are in affirmance of the contract. The doctrine is well stated in 7 Encyc. of Pleading & Practice, page 362, quoted in the case of *Standard Sewing Machine Co.* v. *Owings* (N. C.), 6 A. & E. Ann. Cas. 211, and is as follows:

"As already stated, the principle does not apply to all coexistent remedies. As regards what have been termed consistent remedies, the suitor may, without let or hindrance from any rule of law, use one or all in a given case. He may select and adopt one as better adapted than the others to work out his purpose, but his choice is not compulsory or final, and, if not satisfied with the result of that, he may commence and carry through the prosecution of another. Thus, where a sale of chattels is induced by the fraud of the vendee, the vendor may prosecute the vendee for the price of the articles in one action, and in another for damages on account of the fraud; both proceeding on the theory of ratifying the sale. But he can not maintain either if he has rescinded the sale, or, if, on the theory of rescission, he has resorted to replevin to recover the property. No suitor is allowed to invoke the aid of the courts upon contradictory principles of redress upon one and the same line of facts."

In the case of *Whittier* v. *Collins*, 15 Rhode Island 90, 2 Am. St. Rep. 879, the court held:

"Unsatisfied judgment *in assumpsit* for money loaned is not a bar to an action on the case between the same parties, for deceit on account of false and fraudulent representations made by the defendants in procuring the loan. But the value of the judgment *in assumpsit* should be considered by the jury in assessing the damages in the second action."

In this case, the court said:

"The plaintiff in such case, of course, would not necessarily be entitled to recover the full value of the goods sold, or money lent, but it would be the duty of the jury in assessing the damages, to consider the value of the judgment *in assumpsit,* and if the judgment was thought to have any value, to reduce the assessment accordingly."

As bearing on the question, see also *Hutchinson* v. *Gorman,* 71 Ark. 305, where it is held that a suit for fraud or deceit is in affirmance of the contract.

There were other signers to the note sued on. There was no inconsistency in plaintiff realizing all he could in a suit on the notes and subsequently proceeding against the defendant in an action for fraud and deceit. The unsatisfied judgments against the defendant and the other signers of the note would not bar an action for fraud and deceit against the defendant.

It is next contended by counsel for the defendant that inasmuch as the defendant received his discharge in bankruptcy before this action was commenced, that such discharge is a complete defense. In support of their contention, they cite the cases of *Crawford* v. *Burke,* 195 U. S. 176, and *Tindle* v. *Birkett,* 205 U. S. 183, where the court held that debts, founded upon an express contract, even though they were created through the fraud of the bankrupt, were barred by a discharge in bankruptcy, provided they had not been reduced to judgments. Those decisions were rendered prior to the amendment of the Federal Bankruptcy Act in 1903, and have no application under the facts in the present case. Subdivision 2 of the Bankruptcy Act of 1898 provides that a discharge in bankruptcy which releases the bankrupt from all of his provable debts, except such as "are judgments in actions for fraud, or obtaining property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another." This section, as amended in 1903, provides that "a discharge in bankruptcy releases a bankrupt from all his provable debts, except such as * * * are liabilities

for obtaining property by false pretenses or false representations.'' In discussing the effect of this amendment in the case of *In re Lawrence,* 163 Federal, 131, the court said:

''Upon comparing the two statutes, it will be noted that the former act excepted from the operation of a discharge 'judgments' for fraud or obtaining money by false pretenses or false representations, whereas, by the amendment of 1903, it is provided that 'liabilities' for obtaining money under false pretenses are excepted from the operation of a discharge. The change in the statute above noted makes the opinion of Mr. Chief Justice Fuller, in the case above cited, inapplicable in this case.'' The opinion referred to in the quotation is that delivered in the case of *Tindle* v. *Birkett, supra.* The Supreme Court of New Hampshire, in discussing the effect of this amendment in the case of *Lund* v. *Bull,* 23 A. & E. Ann. Cas. 819, said:

''As a consequence of this change in the statute, it is now held that debts procured through fraud, whether reduced to judgments or not, are not barred by a discharge; and that under this act, as well as under the act of 1867, the fraud inducing the contract or debt must be actual, as distinguished from fraud in law (citing cases). This being so, and it appearing that the defendant procured the money in question from the plaintiff by actual fraud, the discharge in bankruptcy is not a bar to the action.'' See also, *Frey* v. *Torrey,* 175 N. Y. 501; 67 N. E. 1082; see also, Collier on Bankruptcy (9 ed.), pp. 390-91; *Standard Sewing Machine Co.* v. *Kattel,* 22 Am. Bk. Rep. 376, 117 N. Y. S. 32.

In the case of *Strang* v. *Bradner,* 114 U. S. 555, the court held that ''a claim against a bankrupt for damages on account of fraud or deceit practiced by him, is not discharged by proceedings in bankruptcy; nor is a debt created by his fraud, discharged, even where it was proved against his estate, and a dividend thereon received on account.'' The reason given is that the statute expressly declares that a discharge is subject, even in re-

spect of claims provable in bankruptcy, to the limitation that no debt created by the fraud of the bankrupt shall' be discharged by the proceedings in bankruptcy. This decision was based upon a construction of the act of 1867. The bankruptcy act of 1898, as amended in 1903, enumerating debts not affected by discharge given thereunder provides that a discharge shall release a bankrupt from all his provable debts, except such as are liabilities for obtaining money by false pretenses or false representations. In this respect, both the act of 1867 and the act of 1898, as amended in 1903, differ from the original act of 1898. That is to say, under the law as amended by the act of 1903, as well as under the act of 1867, the creditor's claim for a liability created by false representations need not have been reduced to judgment in order to be excepted from the operation of the discharge.

In the case of *Talcott* v. *Friend*, 103 C. C. A. 80, the court held that "an action for deceit is not based on a rescission of the contract, but implies an affirmance; and the proving of a claim in bankruptcy for the price of goods sold and delivered on a contract, and the receiving of dividends thereon is not a bar to a subsequent action by the creditor for deceit based on fraudulent representations inducing the sale." The court further held that the action of a creditor in opposing a bankrupt's discharge on the ground that he obtained credit on a materially false statement is not a bar to a subsequent action by the objecting creditor against the bankrupt for deceit based upon the same false statement. Moreover, in the present case, the plaintiff withdrew its objections, and there was no finding of the court thereon. Therefore, we hold that the plaintiff is not barred from maintaining this action.

The term, "fraud," in the clause of the bankruptcy act of 1867, defining the debts from which a bankrupt is not relieved by a discharge under the bankruptcy act, was held to mean positive fraud or fraud in fact involving moral turpitude or intentional wrong; and not implied fraud or fraud in law, which may exist without the impo-

sition of bad faith or immorality.  *Neal* v. *Clark,* 95 U. S. 709.

While the later bankrupt act differs in language from the act of 1867, the purposes of the acts are the same, and the term fraud in the later act is to be given the same meaning as in the act of 1867.  *Bullis* v. *O'Beirne,* 195 U. S. 606.

In *Forsyth* v. *Vehmeyr,* 177 U. S. 177, the court held that "a representation as to a fact, made knowingly, falsely and fraudulently for the purpose of obtaining money from another, and by means of which such money is obtained, creates a debt by means of a fraud involving moral turpitude and intentional wrong."  See also *Morris* v. *Covey* (Ark.), 148 S. W. 257.

In the case of *Hutchinson* v. *Gorman,* 71 Ark. 305, the court said: "In order to sustain an action for deceit, the plaintiff must not only show that he was misled and damaged by a false representation concerning a material fact, but he must go further, and show that the defendant knew at the time he made it that the representation was false, or that, being ignorant of whether it was true or false, he asserted that it was true, and did so with the intention to deceive the plaintiff."

The court followed the principles of law announced in these decisions, and the instructions were full and complete, covering every phase of the issues involved in the case.

The testimony shows that the plaintiff did not discover the fraud of the defendant until in the spring of 1909.  The complaint in the present case was filed on April 13, 1911, and summons was issued on that date. Therefore, the action is not barred by the statute of limitations of three years.  See *Conditt* v. *Holden,* 92 Ark. 618, and cases cited; *McKneely* v. *Terry,* 61 Ark. 527.

The judgment will be affirmed.