MERCHANTS' NATIONAL BANK OF FORT SMITH *v.* TAYLOR.

Opinion delivered March 17, 1930.

*Daily & Woods,* for appellant.
*Hill, Fitzhugh & Brizzolara,* for appellee.

MEHAFFY, J. The People's Bank of Ozark was a State bank, and Walter E. Taylor, as Bank Commissioner of the State of Arkansas, took charge of the People's Bank of Ozark on February 25, 1926, for the purpose of administering same pursuant to the laws of Arkansas, and is administering the property and affairs of said bank pursuant to the statutes of Arkansas.

The People's Bank of Ozark was indebted to the Merchants' National Bank of Fort Smith, the appellant herein, on a promissory note, bearing date of January 12, 1926, in the sum of $14,915. The appellant was the owner and holder of said note at the time of the failure of the People's Bank of Ozark, and presented its claim on said note for the sum of $14,915 to the Bank Commissioner, and said claim was allowed by him as a valid general claim. Said note was secured by collateral notes aggregating the sum of $23,742.36, and the proof of the claim showed that the note of the People's Bank was secured by this collateral.

The Bank Commissioner, with a view to declaring a dividend, ascertained from the appellant the balance due upon the note held by appellant, and was informed that the balance due upon said note after crediting collections from collateral was $11,928.56. On July 8, 1926, the Bank Commissioner filed a petition in chancery court, wherein he set out the amount of claims then outstanding against the People's Bank of Ozark, including as plaintiff's claim $11,928.56. The Bank Commissioner asked for an order authorizing him to pay a 10 per cent. dividend on the amount of the claims filed, and he did pay 10 per cent. to appellant on the $11,928.56, but did not pay a dividend on the $14,915. In other words, the Bank Commissioner paid a dividend on the amount of plaintiff's claim at the time of the distribution or payment of the dividend.

Before another dividend was paid appellant's claim had been reduced by collections from the collaterals to $5,177.40 and an 8 per cent. dividend was declared and paid on this amount. Thereafter, another dividend of 10 per cent. was paid, but at the time it was paid appellant's claim had been reduced by collections of collateral to $2,638.59, and the 10 per cent. dividend was paid on this amount.

It is the contention of the appellant that all dividends should have been paid on the full amount of the proved

claim, without deducting the collections made from collateral between dividends. In other words, it contends that at the time it filed its claim there was due from the People's Bank of Ozark $14,915, and that the dividends each time should have been paid on this amount, and not on the amount as reduced by payments from collaterals.

The question to be decided by this court is whether dividends should have been paid on the full amount of plaintiff's claim filed with the Bank Commissioner, or whether it should have been paid on the actual amounts due it at the time the dividend was paid.

There is considerable conflict in the authorities as to whether a creditor holding collateral must first seek satisfaction out of such collateral, some jurisdictions holding that a secured creditor is entitled to prove his entire claim as though he had no collaterals, and to take a dividend like other creditors, and afterwards to apply the proceeds of the collaterals to the unpaid balance of his claim, turning over the excess, if any there be, to the trustee or receiver or Bank Commissioner for the benefit of other creditors. This is the rule contended for by appellants. And this rule for the payment of a dividend on the full amount of the creditor's claim without deducting anything received from the collateral held is supported by decisions of the Supreme Court of the United States, and other Federal courts and some State courts.

The case of *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131, 19 S. Ct. 360, and *Aldrich* v. *Chemical National Bank,* 176 U. S. 618, 20 S. Ct. 498, and other authorities cited, are relied on by appellant in this case. The authorities referred to support appellant's contention. In the case of *Merrill* v. *National Bank of Jacksonville, supra,* the court said that counsel agree that four different rules have been applied in the distribution of insolvent estates, and held that rule No. 4 was applicable, and that rule is as follows:

"The creditor can prove and receive dividends upon the full amount of his claim, regardless of any sums received from his collateral after the transfer of the assets from the debtor in insolvency, provided, that he shall not receive more than the full amount due him."

The rule contended for by appellant and sustained by the authorities referred to, is known as the chancery rule. It is contended by the appellant that our statute or banking act is, in effect, a borrowed act, and that it largely follows the National Banking Act of the United States, and that, for that reason, this court should follow the opinion of the United States Supreme Court construing the National Banking Act.

There are several important differences in the statutes which would justify this court in adopting a different rule than that adopted by the Supreme Court of the United States. We have a statute prohibiting preferences among creditors of all insolvent corporations, except for laborers and employees. And Mr. Justice White, in a dissenting opinion in the case of *Merrill v. National Bank of Jacksonville,* points out very clearly how the application of the chancery rule would result in preferences to secured creditors. Of course, it is important in matters of this sort that there be uniformity, and, for that reason, where this court has not decided the question, it will follow the decision of the United States Supreme Court where the statutes are similar, or where it is a question involving general business dealings of the citizens of different States. As said by this court:

"In such matters it is important that uniformity should obtain in the different jurisdictions, and that but one rule should be applied to the business dealings of the citizens of the different States with each other, so closely interwoven is such business activity and association with the vast commercial life of the nation; and since the United States Supreme Court is the highest

court of last resort, and does not follow the decisions of the State courts upon general banking and commercial questions, we will follow it." *Sims* v. *American National Bank of Fort Smith,* 98 Ark. 1, 135 S. W. 356; *Exchange Natl. Bank* v. *Coe,* 94 Ark. 387, 127 S. W. 453, 31 L. R. A. (N. S.) 287, 21 Ann. Cas. 934.

We think this question has been settled by the decision of this court in the case of *Jamison* v. *Adler-Goldman Commission Co.,* 59 Ark. 548, 28 S. W. 35, and that the rule there adopted is applicable here. The statute there construed was not the Banking Act, but the rule adopted by this court is applicable under the Banking Act, the same as under the statute construed in the Jamison case. In that case the court, speaking through Judge BATTLE, said:

"Creditors are required to present their claims for the amount due them when it is presented, and to swear that nothing had been paid or delivered towards the satisfaction of it, except what is credited thereon, and that the sum demanded, naming it, is justly due. They may present their claims within one year and 364 days after the grant of the first letters—upon the close of the administration—but they must make this oath before their demands can be allowed; the statute thereby showing clearly an intention that they shall not share in the assets of the estate, except upon the basis of what is actually due after all payments are deducted. This being the manifest intention of one, it is presumed that it pervades the other statutes upon the same subject, and that when they say, if there be not sufficient to pay the whole of one class, such demands shall be paid in proportion to their amounts, according to an apportionment made by the court, they mean by "amounts" the sum actually due at the time of the apportionment. When money is received from collaterals or mortgages held as security, in part payment of claims, they are certainly diminished accordingly, and their amounts become the balances due on them."

So we have the construction placed upon a similar statute by this court, expressly holding that when money is received from collaterals or mortgages held as security in part payment of claims, they are certainly diminished, and their amounts become the balances due on them. This is in harmony with the dissenting opinion by Mr. Justice WHITE in *Merrill* v. *National Bank of Jacksonville,* and we think it is decidedly the most equitable rule.

Numerous authorities are reviewed in the opinion in the Jamison case, and also in the *Merrill* v. *National Bank of Jacksonville* case, and we do not think it would be of any importance to review the authorities here. There are the different rules, but we think the one heretofore adopted by this court is the most just and equitable rule. The injustice of the rule adopted by the Supreme Court of the United States is pointed out by Mr. Justice WHITE in his dissenting opinion, as follows:

"Let me illustrate the unavoidable consequence of the doctrine now recognized. A loans a national bank $5,000, and takes as the evidence of such loan a note of the bank for the sum named, without security. The lender is thus a general or unsecured creditor for the sum of $5,000. B loans to the same bank $5,000, without security. He is applied to for a further loan, and agrees to loan another $5,000 on receiving collateral worth $5,000, and requires that a new note be executed for the amount of both loans, which recites that it is secured by the collateral in question. While theoretically, therefore, B is a secured creditor for $10,000, he practically has no security for $5,000 thereof. Insolvency supervenes. The general assets received by the Comptroller equal only fifty per cent. of the claims. Now, under the rule which the court establishes, A on his unsecured claim of $5,000, collects a dividend of but $2,500, thereby losing $2,500; B, on the other hand, who proves $10,000, taking no account whatever of his collateral, realizes by way of dividends $5,000, and by collections on collaterals

a similar amount, with the result that, though as to $5,000 he was, in effect, an unsecured creditor, he loses nothing. B is thus in precisely as good a situation as though he had originally demanded and received from the borrowing bank collateral securities equal in value to the full amount loaned. It is thus apparent that the application of the rule would operate to enable B,—who, I repeat, virtually held no collateral security for $5,000 of the sums loaned—to be paid his entire debt, though the assets of the insolvent estate of the borrower paid but fifty cents on the dollar, while another creditor, holding an unsecured claim for $5,000, fails to realize thereon more than $2,500.''

The illustration by Mr. Justice WHITE shows clearly how the rule might operate. We think that the rule adopted by this court, as announced in the Jamison case, and the rule contended for in the dissenting opinion of Mr. Justice WHITE, is decidedly more equitable and fairer than either of the other rules, with reference to distribution of the estate of insolvent corporations. The rule is that when one files a claim, he files it for the full amount due at that time. If his claim is secured by collateral, and he collects anything from the collateral before a dividend is paid, then his dividend is calculated on the amount, reduced by the amount of the collateral collected. If there is still another collection from collateral before another dividend, the creditor is entitled to a dividend on the amount, reduced by the amount of the collateral received. In other words, he is entitled to a dividend on the amount of his debt at the time the distribution is made, and not entitled to a dividend on the claim as originally filed if anything has been realized from collateral.

Other questions have been argued by attorneys, but the conclusions we have reached make it unnecessary to discuss or decide those questions. We do not think it worth while to review the authorities any further, be-

cause the only question here is whether a creditor holding collateral can receive dividends each time on the amount of his original claim or whether the other rule applies, permitting him to receive dividends on his claim, as reduced by payments of collateral. We think the latter rule is the most just, and the one adopted by this court, and we therefore conclude that the decree of the chancellor was correct, and it is affirmed.