DAVIS v. LAWHON.

4-2616

Opinion delivered June 27, 1932.

*George B. Pugh* and *J. H. Carmichael,* for appellant.
*Compere & Compere,* for appellee.

MEHAFFY, J. The firm of Jackson-Hill Cotton Company became indebted to the American Southern Trust Company, and, to secure its debt, executed a deed to the American Southern Trust Company conveying about 8,000 acres of land in Ashley County, Arkansas. The conveyance, although a deed in form, in fact was a mortgage, and signed by the individual members of the firm of Jackson-Hill Cotton Company, and their wives, as follows: Ranson J. Jackson and Ann C. Jackson, his wife; B. O. Jackson and Della McM. Jackson, his wife; Harry E. Hill and Bracey Jackson Hill, his wife.

Bracey Jackson Hill was the sister of B. O. Jackson and Ranson J. Jackson, and was living in Pulaski County until the time of her death. Harry E. Hill was appointed administrator of her estate.

W. O. Davis was appointed receiver of the American Southern Trust Company, and presented the claim to the administrator of the estate of Bracey Jackson Hill, which claim was disallowed by the administrator.

Thereafter, on October 15, 1931, the claim was allowed by the probate court of Pulaski County. Before the

claim was filed in the probate court of Pulaski County, suit had been filed by W. O. Davis, receiver, in Ashley County, Arkansas, to foreclose the mortgage in that county. Said suit is now pending in the Ashley County Chancery Court.

Thereafter a petition on behalf of the children of Bracey Jackson Hill was filed in Pulaski Probate Court, asking that the allowance of said claim be set aside, and that the court remove Hill as administrator, and appoint R. J. Jackson administrator in succession of the estate of Bracey J. Hill, deceased.

The probate court made an order reciting the pendency of the suit in Ashley Chancery Court against the administrator and others to foreclose the mortgage, and to obtain a judgment against the administrator and others upon the notes sued on. The probate court, for that reason, set aside the allowance made on December 23, 1931, and refused to allow or disallow the claim. Appellant then filed in the Pulaski Circuit Court a petition for a writ of mandamus to compel the Pulaski Probate Court to act on the claim.

Ross Lawhon, the judge of the Pulaski Probate Court, did not appear, and an order was issued directing him to pass on the claim, and either allow or disallow it.

Thereafter Ross Lawhon, judge of the probate court, filed a petition and asked that the writ be set aside. The circuit court set aside the writ and refused to issue the writ of mandamus. The case is here on appeal.

The only issue involved is whether appellant can foreclose in one county a mortgage which he holds and at the same time, during the pendency of the foreclosure suit, probate his claim against the estate in another county.

The appellee's first contention is that § 1189 of Crawford & Moses' Digest prohibits the prosecution of the suit in Pulaski Probate Court, while the foreclosure suit is pending in another county. He relies on the third paragraph of the above section, which states, as a ground of

demurrer, that there is another action pending between the same parties for the same cause.

The suits are not between the same parties, and they are not for the same cause. The suit in the Pulaski Probate Court is against the estate of Bracey Jackson Hill for an allowance against the estate. The suit in Ashley Chancery Court is against several persons, including the administrator of the estate of Bracey Jackson Hill, and is for the foreclosure of a mortgage.

The Pulaski County Probate Court would have no jurisdiction to foreclose a mortgage, and the Ashley Chancery Court would have no jurisdiction to allow a claim against the estate of Bracey Jackson Hill.

It is only in cases where two courts have concurrent jurisdiction of the same cause of action that the pendency of the case in one court bars the right to pursue the same remedy by the same parties in another court. *Kastor* v. *Elliott,* 77 Ark. 148, 91 S. W. 8; *Simms* v. *Miller,* 151 Ark. 377, 236 S. W. 828; *Bd. Dir. St. Francis Levee Dist.* v. *Redditt,* 79 Ark. 154, 95 S. W. 482.

It is said that, if the Pulaski County Probate Court allows or disallows the claim, this will bring about a conflict of jurisdiction with the chancery court of Ashley County. It is true that one court might find one amount, and another court a different amount. One court might find there was liability and the other that there was no liability, but these questions are not before us, and, if such a thing should happen, and appeals be taken in both cases to this court, it would then become the duty of this court to decide this question.

But the question now before the court is whether another suit pending in Ashley County was a bar to the right of prosecuting the claim in the probate court of Pulaski County, and, as we have said, it is not between the same parties, and is not the same cause of action, and the pendency of the suit in Ashley County does not prevent the claimant from prosecuting his claim in the probate court of Pulaski County. It is only in cases where the causes of action are inconsistent that the prosecution

of one suit bars the other. Where the two remedies are cumulative and not inconsistent, both suits may be prosecuted at the same time. *Sturdivant* v. *Reese,* 86 Ark. 452, 111 S. W. 261; *Dilley* v. *Simmons National Bank,* 108 Ark. 342, 158 S. W. 144; *Craig* v. *Meriwether,* 84 Ark. 298, 105 S. W. 585.

"Where the law affords several distinct but not inconsistent remedies for the enforcement of a right, the mere election or choice to pursue one of such remedies does not operate as a waiver of the right to pursue the other remedies. In order to operate as a waiver or estoppel, the election must be between coexistent and inconsistent remedies. To determine whether coexistent remedies are inconsistent, the relation of the parties with reference to the right sought to be enforced as asserted by the pleadings should be considered. If more than one remedy exists, but they are not inconsistent, only a full satisfaction of the right asserted will estop the plaintiff from pursuing other consistent remedies. All consistent remedies may in general be pursued concurrently even to final adjudication; but the satisfaction of the claim by one remedy puts an end to the other remedies." *American Process Co.* v. *Florida Pressed Brick Co.,* 56 Fla. 116, 47 So. 942, 16 Ann. Cas. 1054.

"Another class of cases exists where there is but one cause of action but in which different or alternative remedies may be pursued. It is permissible to follow these remedies or reliefs independently, even in some cases to judgment, although but one satisfaction can be had. Thus a creditor whose claim is secured by two written obligations falling due simultaneously has a right to proceed at once thereafter upon either or both of them to enforce payment of the amount due." 9 R. C. L. 958-59.

"The doctrine of the election of remedies, that the pursuit of one remedy will exclude the pursuit of another applies only to those cases in which the party has two or more remedies which are inconsistent with each other, and has no application to a state of facts where the remedies available to him are concurrent and consistent.

Where the law furnishes a party with two or more concurrent and consistent remedies, he may prosecute one or all until satisfaction is had; but a satisfaction of one is a satisfaction of all. He may select and adopt one as better adapted than the others to work out his purpose, but his choice is not compulsory or final." 20 C. J. 6-7.

It is said in a note cited in support of the above text as follows: "If more than one remedy exists, but they are not inconsistent, only a full satisfaction of the right asserted will estop the plaintiff from pursuing other consistent remedies. All consistent remedies may in general be pursued concurrently even to final adjudication; but the satisfaction of the claim by one remedy puts an end to the other remedies." Note 56, 20 C. J. 7.

If the remedies had been the same, and the parties the same in each court in this case, then the jurisdiction of the court which had been first invoked would retain jurisdiction, and no other court would exercise jurisdiction during the pendency of the first suit. In other words, where courts have concurrent jurisdiction, the one that first obtains jurisdiction will determine the case, and no other court with concurrent jurisdiction would be permitted to interfere. But where the remedies are wholly different, as they are in this case, and are consistent, as they are in this case, then they are cumulative, and the plaintiff may pursue as many remedies as he may have.

In a recent case we said: "We find nothing in the law requiring a plaintiff to exhaust his security in the mortgage before resorting to other proceedings. A plaintiff creditor may prosecute all remedies against a debtor with the right, of course, to only one satisfaction of the debt." *Vaughan* v. *Screeton,* 181 Ark. 511, 27 S. W. (2d) 789; *Rhodes* v. *Cannon,* 112 Ark. 6, 164 S. W. 752; *England* v. *Spillers,* 128 Ark. 33, 193 S. W. 86.

Our attention has been called to the case of *McLean* v. *McLean,* 184 Wis. 495, 199 N. W. 459. It may be said in the first place that the authorities on the question here involved are not entirely harmonious. Different States have different statutes governing the question, but in the

case of McLean, referred to, the court said that the owner of the mortgage had the right to pursue one of three remedies, and that statement indicates that that court might hold that they could not all be prosecuted at the same time.

But this question was not before the court in the McLean case. The court itself stated as follows: "The appellants in the court below pleaded the statute of limitations, and the only question involved on this appeal is whether or not the note and mortgage are barred by such statutes." The court was not considering the question before us; it was unimportant. No one connected with the case gave any thought to the proposition here involved, because the only question before the court was the question of the statute of limitations.

The weight of authority seems to be that, where one has cumulative and consistent remedies, he may pursue all or one.

Attention is called to the case of *Jamison* v. *Adler-Goldman Commission Co.*, 59 Ark. 548, '28 S. W. 35, and the case of *Merchants' Nat. Bank of Ft. Smith* v. *Taylor*, 181 Ark. 356, 25 S. W. (2d) 1048. Under these authorities, if any amounts were collected from the securities, it would, of course, have to be applied in reduction of the claim in probate court. So, also, if payments were made on the claim in the probate court, the claim pending in the Ashley Chancery Court would necessarily be reduced by the amount collected in the probate court.

In other words, although a person may pursue one or all his remedies, he can have but one satisfaction.

The judgment of the circuit court is reversed, and the cause remanded with directions to issue the writ.

SMITH, J., (dissenting). The majority say that, if any amount is realized from the mortgage, the sum realized would have to be applied in reduction of the claim in the probate court, and that, if payments were made on the claim in the probate court, the claim pending in the Ashley Chancery Court would necessarily be reduced by the amount collected in the probate court, and the

cases of *Jamison* v. *Adler-Goldman Commission Co.*, 59
Ark. 548, 28 S. W. 35, and *Merchants' Nat. Bank of Ft.
Smith* v. *Taylor,* 181 Ark. 356, 25 S. W. (2d) 1048, are
cited in support of this statement.

The majority have, however, ordered the probate
court, notwithstanding this declaration of the law, to
proceed to hear and class appellant's demand, notwith-
standing another court having full jurisdiction has al-
ready assumed jurisdiction and is still asserting it.

Judge Battle defined the proper practice to follow
in this and similar circumstances in the case of *Jamison*
v. *Adler-Goldman Commission Co., supra,* where he said:
"In regulating the rights of creditors, the statutes give
ample time in which to present their claims, and provide
that they shall be paid equally according to classes. They
take from the administrator the right to prefer one to
another. To this extent they cure defects in the common
law, and provide for the greater security of creditors.
The changes made are commensurate with the evils in-
tended to be remedied. They make no change, however,
as to any vested interest that each shall take in the estate.
Creditors are required to present their claims for the
amount due them when it is presented, and to swear 'that
nothing has been paid or delivered towards the satisfac-
tion of it, except what is credited thereon, and that the
sum demanded naming it, is justly due.' They may pre-
sent their claims within one year and 364 days after the
grant of the first letters—upon the close of the adminis-
tration—but they must make this oath before their de-
mands can be allowed; the statute thereby showing clear-
ly an intention that they shall not share in the assets
of the estate, except upon the basis of what is actually
due after all payments are deducted. This being the man-
ifest intention of one, it is presumed that it pervades
the other statutes upon the same subject, and that when
they say, 'if there be not sufficient to pay the whole of
one class, such demands shall be paid in proportion to
their amounts,' according to an apportionment made by
the court, they mean by 'amounts' the sum actually due

at the time of the apportionment. When money is received from collaterals or mortgages held as security, in part payment of claims, they are certainly diminished accordingly, and their amounts become the balances due on them. This construction was placed upon similar statutes of Missouri, in a similar case, in *Estate of McCune,* 76 Mo. 200. In *Haskill* v. *Sevier,* 25 Ark. 152, the same construction was partially placed upon the statutes of this State. In that case the court directed a foreclosure of a mortgage upon land which was executed by John A. Jordan, deceased, in his lifetime, to secure a debt, and directed that, if the proceeds of the sale were not sufficient to pay the debt, the balance thereafter remaining should be certified to the probate court, and there classed against the estate of Jordan.''

In other words, where the mortgagee is unwilling to rely exclusively on his mortgage for the satisfaction of his demand, but wishes to share, as a general creditor, in the distribution of the general assets, he should first exhaust his security and apply the proceeds thereof to the partial satisfaction of his demand, and it is the balance then remaining—and this balance only—which he may probate as a general creditor.

This was the practice, conforming to our own, which was approved by the Supreme Court of Wisconsin in the case of *McLean* v. *McLean,* 184 Wis. 495, 199 N. W. 459. Speaking of the remedies of a mortgagee against the estate of a deceased mortgagor, the Supreme Court of Wisconsin there said: ''Up to the time of the death of Mary E. McLean, as a joint maker of the note, she was liable for the principal and the interest, and her property remained as security by virtue of the mortgage. Upon her death, the owner of the mortgage had the right to pursue one of three remedies as against her: First, she could file her claim for the full amount of the note, with interest, against the estate of the deceased, and thereby recover the full amount of the personal obligation; second, she could file a contingent claim for a possible deficiency on the foreclosure, and then proceed with

a foreclosure suit in the circuit court for the foreclosure of the mortgage; or third, she could rely solely upon her security and the foreclosure of her mortgage.'' See also 2 Woerner's American Law of Administration (3d ed.) chapter XLIVa.

This was a practice which the probate court was attempting to follow, and would have followed but for the directions of the majority to proceed now, independently of the action of the chancery court, to pass upon and class the full demand, regardless of the credits which may arise from the sale of eight thousand acres of land under the decree of foreclosure in the Ashley Chancery Court.

In his excellent work on Arkansas Mortgages, at § 322 thereof, Judge HUGHES says: ''So far as the mortgage itself is concerned, the probate court is without power. That court has no jurisdiction in respect of foreclosure or redemption, and even its judgment allowing the mortgage debt as a claim against the estate is not conclusive upon chancery courts as to the amount of the debt in foreclosure or redemption actions subsequently instituted therein.'' Here, however, the probate court is directed to proceed in a matter over which the chancery court first obtained jurisdiction and in which it is still asserting that jurisdiction.

The views here expressed are not in conflict with the statement of the remedies of a mortgagee against the estate of a deceased mortgagor appearing in *Rhodes* v. *Cannon*, 112 Ark. 13, 164 S. W. 752. It was there said that the mortgage creditor might go into the probate court and probate his claim against the estate generally, or might foreclose his lien in the chancery court, or that he might pursue both remedies, but there was not involved in that case, as there is here, any question as to the practice in the pursuit of these remedies.

Here the expressed purpose of the probate court was to treat the demand of appellants as properly filed for allowance, but to postpone the adjudication of the balance due thereon until it became known what credits

would arise from the sale of the lands under the foreclosure proceeding pending in the Ashley Chancery Court, and, as I think this was the proper course for that court to pursue, I dissent from the order of this court awarding a writ of mandamus directing the probate court to allow the demand before knowing what credits should be applied thereon.

I am authorized to say that Mr. Justice BUTLER concurs in the views here expressed.