BASKIN *v.* ÆTNA LIFE INSURANCE COMPANY.

4-3743

Opinion delivered February 25, 1935.

*Arnold & Arnold, Rodgers & Rodgers,* and *T. B. Vance,* for appellants.

*Owens & Ehrman,* for appellees.

*Jones & Jones* and *Crumpton & Crumpton,* for intervener.

BUTLER, J. Gordon H. Campbell is now, and has been for many years, the general agent of appellee insurance company. As such, he employs special agents to solicit applications for life insurance policies to be issued by appellee. M. E. Milestone was a special agent employed by Campbell and was to be paid for his services a certain percentage of the initial premium payments and commissions, running over a period of from four to nine years, on premiums subsequently paid, called "renewal commissions." In the contract it was provided that "any commissions due the second party (Milestone) under this agreement, either while in force, or after termination, shall first be applied to liquidate his indebtedness, if any, to first party (Campbell) or the company." The insurance company was not a party to the contract, but approved the appointment of Milestone and undertook that, if Campbell ever ceased to represent it in Arkansas, the company would assume Campbell's obligations to Milestone, so far as they related to the payment of renewal commissions.

Milestone operated under this contract, from time to time borrowing from Campbell money, to secure which commissions were assigned under the agreement. These sums amounted to $4,722.14 on December 28, 1931. On that date Milestone died. He was, at that time and had been, insolvent, owing a number of debts which were probated against his estate. His widow, intervener, now Mrs. Hawkins, out of the proceeds of life insurance policies in which she was the beneficiary, purchased from the creditors their debts against the estate which had been probated in the sum of $7,928.97. She purchased from Campbell the indebtedness due him by her deceased husband, paying therefor by her check $4,722.14 and receiving from Campbell a formal assignment of the indebted-

ness with security therefor. By this assignment Campbell undertook to pay over to Mrs. Hawkins the renewal commissions as collected.

The appellants, Allie West Baskin and Dr. R. R. Dale, filed their complaints in the Miller Chancery Court against William A. Smith, administrator of the estate of M. E. Milestone, praying judgment for debts due them by the estate, and against the appellees, Gordon H. Campbell and the life insurance company, praying for a statement of the account between them and Milestone, and that they be required to pay into court all money due Milestone and his estate since his death. The administrator answered admitting that the claims of plaintiffs had been exhibited and made his answer a cross-complaint against the appellees, insurance company and Gordon H. Campbell, alleging that they were indebted to the estate of his decedent in excess of $5,000, and praying that they should account to the defendant as administrator of the estate, and that he have judgment for such sums as might be found to be due. To this complaint interrogatories were attached propounded to the insurance company.

Gordon H. Campbell answered alleging that he had entered into a contract in June, 1923, with M. E. Milestone, whereby Milestone became an agent for the insurance company under his general agency. He set up the clause in the contract heretofore quoted and alleged that under its terms he had advanced money to Milestone so that Milestone was indebted to him at the time of his death.

The insurance company answered alleging the lien Campbell had on the renewal commissions, that Mrs. Hawkins had purchased the indebtedness due Campbell, and that he had assigned to her the renewal commissions. The interrogatories were answered and an account was filed showing its state at the time of Milestone's death, and premium commissions collected and paid to Mrs. Hawkins and the amount then on hand of renewal commissions not paid to Mrs. Hawkins.

On July 27, 1933, the court rendered its decree in accordance with the prayer of the complaints (the causes

having been consolidated for trial), rendering judgment against the insurance company in favor of the administrator in the sum of $3,122.24, and in favor of Mrs. Baskin and Dr. Dale against the administrator for the amounts claimed by them, allowing $322 as an attorney's fee.

Subsequent to the rendition of this decree, the appellees filed their complaint under § 6290 of Crawford & Moses' Digest, to set aside the decree, to which a response was filed, and Mrs. Hawkins intervened. The court heard the complaint and the evidence introduced at the hearing, and found that there was a misunderstanding between counsel for Mrs. Baskin and counsel for the insurance company and Campbell with reference to the date set for trial of the cause. The court found that there was no fraud practiced by the successful parties to the decree of July 27, 1933, but that it would be inequitable to allow said decree to stand. On the hearing of the petition for setting aside the decree, the court heard evidence on the defenses alleged in the original answer and petition and found that Milestone, at the time of his death, was indebted to Campbell in the sum of $4,722.14, evidenced by promissory note and accounts stated; that on January 25, 1932, Campbell assigned to Mrs. Hawkins this debt, with a lien on the renewal commissions, and that she thereby became subrogated to the right of Campbell to the commissions to the extent of the amount of the debt purchased, with interest thereon at 6 per cent. from date of assignment until paid. There was a finding that Mrs. Hawkins had received from Campbell, from the renewal commissions, the sum of $1,404.32; that she is entitled to the sum of $1,984.14, collected by Campbell and paid into the registry of the court as renewal commissions collected between the date of the filing of the causes and the date the deposit was made; that she is entitled to receive all renewal commissions which may mature in the future until she shall have received the sum of $4,722.14 with interest, and that any commissions accruing thereafter should be paid to the administrator.

Appellants first insist that the complaint to vacate the judgment was insufficient to give the court jurisdic-

tion because of failure to comply with § 6292 of Crawford & Moses' Digest, which provides, among other things, that the complaint shall be verified by affidavit "setting forth the judgment or order sought to be vacated." The contention is that this would require a copy of the judgment to be incorporated in the complaint. We do not think so, nor do the cases cited by the appellants so decide. It is sufficient, as was done by the appellees, to make specific reference to the decree which is sought to be vacated so as to identify it.

It is next contended that there was no evidence of fraud practiced upon the court by the successful party in the procurement of the judgment, and that the court, by its decree, specifically found there was no fraud practiced, and that, because of this, the decree setting aside the decree of July 27 was erroneous. Among the grounds stated in § 6290 of the digest giving power to the court, after expiration of the term, to vacate the judgment is for unavoidable casualty or misfortune preventing the party from appearing and defending. In this case the decree was rendered in the absence, and without the knowledge of the appellee, which, as the court found, was the result of a misunderstanding between counsel, and that it would be inequitable to permit the decree to stand. There is the following allegation in the complaint: "That it was understood between counsel and the court that if said cause was not removed a new date for trial would be agreed on." There was some evidence tending to establish this allegation, and the court might have had some personal knowledge of the conversation out of which he found the misunderstanding grew. That there was such misunderstanding, and that it would be inequitable to let the decree stand, is sufficient to constitute an unavoidable casualty or misfortune within the meaning of the statute.

In the case of *Berringer* v. *Stevens*, 145 Ark. 293, 225 S. W. 14, this court held that a misunderstanding resulting in the failure of the defendant to appear and defend should be classed as an unavoidable casualty. In *Wrenn* v. *Manufacturers' Furniture Co.*, 172 Ark. 599, 289 S. W. 769, where there was no fraud practiced, but where there

was a misunderstanding, we held that this constituted an unavoidable casualty within the meaning of the statute. *Berringer* v. *Stevens, supra,* before the decision of the Wrenn case had been followed in *McIlroy* v. *Underwood,* 170 Ark. 794, 281 S. W. 368. This doctrine has been re-affirmed in *American Company of Ark.* v. *Wilson,* 187 Ark. 625, 61 S. W. 453, and in the recent case of *Union Savings B. & L. Ass'n* v. *Grayson, ante* p. 62.

The amount of debt owed by Milestone at his death to Campbell is undisputed, but the contention is that when he died the renewal commissions became the property of his estate, and could not be applied to the satisfaction of the debt due Campbell. This contention overlooks the fact that the commissions were earned by Milestone before his death, and the amount thereof was fixed and certain, depending only upon the continued payment of premiums by the policyholders. They had a well-recognized present value, and were the subject of assignment. The provision in the contract to the effect that the commissions due Milestone should be applied to liquidate his indebtedness to Campbell or the insurance company was intended to create a positive charge against the commissions, and it attached in equity as a lien on the commissions whenever they might be collected. *Williams* v. *Cunningham,* 52 Ark. 439, 12 S. W. 1072; *Arkansas Cypress, etc., Co.* v. *Meto Valley Ry. Co.,* 97 Ark. 534, 134 S. W. 1195.

The contention of appellants that before Campbell could collect the debt due him by Milestone he would first have to probate the same against the estate is untenable. Since he had a lien on the commissions, he had the prior right to collect his debt out of the sums accruing from these commissions over the general creditors of the estate, and may collect his debt out of such funds without resort to the general assets of the estate. *Hall* v. *Denckla,* 28 Ark. 506; *Nichols* v. *Gee,* 30 Ark. 135; *Barber* v. *Peay,* 31 Ark. 392; *Richardson* v. *Hickman,* 32 Ark. 406.

We have carefully examined the cases cited by appellants in support of their contention, but do not think they establish a rule contrary to that we have stated.

When Mrs. Hawkins purchased the debt of her deceased husband from Campbell, she became subrogated to his lien on the funds arising from the renewal commissions. After she had acquired the debt she probated it against the estate which, appellant contends, estops her from enforcing her lien. It is true, a party may not pursue inconsistent remedies, but this action by Mrs. Hawkins is not inconsistent with the enforcement of her lien, and she might pursue either or both remedies, being entitled to only one satisfaction. *England* v. *Spillers,* 128 Ark. 31, 193 S. W. 86; *Davis* v. *Lawhon,* 186 Ark. 51, 52 S. W. (2d) 887.

It follows that the decree of the trial court is in all things correct, and it is therefore affirmed, but without prejudice to interveners, appellants, to proceed in the probate court for an adjudication of their claims against the estate.